CARRYL ELLIS et al., Appellants, v. COLUMBIAN NATIONAL LIFE INSURANCE COMPANY, Respondent.

First Department, December 14, 1945.

144

*David Goldstein* of counsel (*Lawrence Kovalsky* with him on the brief; *Arthur M. Laufer,* attorney), for appellants.

*Samuel M. Lane* of counsel (*James F. Hogan* with him on the brief; *Baldwin, Todd & Lefferts,* attorneys), for respondent.

Townley, J. This action was brought by the plaintiffs as beneficiaries of a $5,000 life insurance policy issued by the defendant on August 7, 1940, to one Robert H. Weiss to recover the face amount thereof because of the death of the insured. The insured was killed June 6, 1944, during the invasion of France while serving as a Flight Officer in the United States Air Force.

On June 22, 1940, Weiss made written application to the defendant for life insurance in the amount of $10,000. The application for the insurance policy states as to the policy desired, " Plan Low Cost Life, $10,000." The action that was taken by the insurance company is indicated on the application as follows: " 15. Corrections and Amendments. (For Home Office

Use Only) Issue in two policies of $5,000 each." Thereafter, on August 7, 1940, the defendant issued to the insured two life insurance policies in the amount of $5,000 each.

The defendant paid the face amount of the first policy but refused to pay on the second which is the policy in suit. The defendant resisted payment on the ground that at the time the policy was delivered, two documents accompanied this policy. The documents consisted of a proposed supplemental agreement and a proposed war clause rider. The proposed war clause rider provides that death as a result of service in the armed forces of the United States is not a risk assumed by the defendant. The proposed supplemental agreement is a written consent to be executed by the insured consenting to the inclusion of the proposed war clause rider in the policy in suit.

At the time of the application Weiss was a member of the National Guard and the defendant claims that it was its business custom at that time not to insure members of the National Guard for an amount greater than $5,000. But the application was not rejected on that ground. Had it been, Weiss could have applied elsewhere for additional coverage.

The reason that the defendant asked for insured's consent to the inclusion of the war clause rider is that the application for the policy provides that " acceptance of any policy issued on this application shall operate as a ratification of any changes or amendments noted by the Company in the space entitled ' Corrections and Amendments,' except that *no change shall be made as to* amount, classification, *plan* of *insurance or benefits, unless agreed to in writing by the* applicant." (Italics our own.)

It is manifest that the war clause rider constituted a radical change in the policy applied for and that the insured's consent in writing was necessary to make it effective.

The policies were never delivered to Weiss personally but were left by the company's agent with the plaintiffs. It is said that the plaintiffs assured the company that they would have the insured sign the proposed supplemental agreement. Whether the plaintiffs were authorized to accept conditional delivery is immaterial because the defendant accepted payments under the policy from 1940 on until the death of Weiss without making any protest that the proposed supplemental agreement had not been signed by Weiss. No steps were taken to recall the policy as issued, but collections of the premiums were demanded for almost four years.

Under the Insurance Law the application is part of the policy and is to be read with it. The policy cannot under the circum-

stances here presented be deemed a counteroffer to the proposal made by the application. The two in combination constitute the insurance contract. Under this contract the limitation upon the general coverage of the policy so as to exclude death while in military service was dependent on the insured's consent. Concededly no such consent was ever obtained and the general provisions of the policy must be held to apply. Under these provisions the plaintiffs are clearly entitled to recover.

As noted above, with full knowledge of the fact that the insured had not signed the proposed agreement, the defendant demanded and collected premiums on the policy for four years. The law was well stated in *Titus* v. *Glens Falls Insurance Co.* (81 N. Y. 410, 419): " But it may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as matter of law waived; and it is now settled in this court, after some difference of opinion, that such a waiver need not be based upon any new agreement or an estoppel. [*Allen et al.* v. *Vermont Mut. Fire Ins. Co.*, 12 Vt. 366; *Webster* v. *Phœnix Ins. Co.*, 36 Wis. 67; *Gans* v. *St. Paul Ins. Co.*, 43 id. 108; *Insurance Co.* v. *Norton*, 96 U. S. 234; *Goodwin* v. *Mass. Mut. Life Ins. Co.*, 73 N. Y. 480, 493; *Prentice* v. *Knickerbocker Life Ins. Co.*, 77 id. 483; *Brink* v. *Hanover Fire Ins. Co.*, 80 id. 108.]

" Forfeitures are not favored in the law, and this doctrine of waiver is not peculiar to insurance policies, but is applicable to all cases of forfeiture."

The order granting defendant's cross motion for summary judgment and the judgment entered thereon should be reversed, with costs, and said motion denied. The order denying plaintiffs' motion for summary judgment should be reversed, and said motion granted.

MARTIN, P. J., DORE, COHN and WASSERVOGEL, JJ., concur.

Judgment and orders unanimously reversed, with costs, plaintiffs' motion for summary judgment granted, and defendant's cross motion for summary judgment denied.