(I)
Matthew M. Levy, J.
The petitioner Allstate Insurance Company (Allstate) instituted this special proceeding against the respondent Joseph Flaumenbaum (Flaumenbaum) seeking to stay arbitration of his claim against Allstate under an uninsured motorist endorsement of an Allstate automobile liability policy.[1] The Motor Vehicle Accident Indemnification Corporation (MVAIC) was, on Flaumenbaum’s application, subsequently joined as a party respondent, as it would or might be liable to Flaumenbaum if Allstate were to succeed in this proceeding (Insurance Law, § 608).
The basic facts are not in dispute. On October 1, 1966, Flaumenbaum and his wife were passengers in a taxicab owned by the Lilac Transportation Company (Lilac) and operated by one Emanuel Shufrin (Shufrin). The cab reached its destination, Flaumenbaum stepped out, and then an unknown vehicle struck the taxicab. The open door of the cab struck Flaumenbaum, causing him to sustain injuries requiring treatment at a hospital, and upon which his claims against Allstate and MVAIC are based. There was and is no claim by Flaumenbaum that Shufrin, the cab driver, or Lilac, his employer, was responsible ■for the injuries.
Flaumenbaum retained the law firm of Tucker & Starr to represent him. On his behalf,, Robert S. Starr, Esq. (Starr), a member of that firm, filed what is known as a notice of intention to make claim with MVAIC in November of 1966, well within the time limit prescribed by statute (Insurance Law, § 601). Starr inquired of Lilac whether its insurance policy had an uninsured motorist endorsement. Lilac replied that it had posted a bond for fleet coverage with the Department of Motor Vehicles, *35 and did not have, nor was it required to have, a policy with such an endorsement. Starr also searched the motor vehicle records to discover whether Shufrin, the cab driver, himself, had a policy with such an endorsement. The record showed no automobile owned by him. An investigator on Flaumenbaum’s behalf endeavored to interview Shufrin, but Shufrin refused to talk to him.
Starr then filed a formal claim with MVAIC, and proceeded with correspondence and negotiations with the P. F. O’Connor Agency (O’Connor), the investigative agent of MVAIC. These continued until February, 1968, when 0 ’Connor informed Starr —by telephone on the 7th, and by confirming letter dated the 8th, and received on the 9th — that Shufrin’s wife, Pearl, had an Allstate insurance policy with an uninsured motorist endorsement which would cover Flaumenbaum. Starr immediately— on the 9th of February — wrote to Allstate, setting forth the situation. By letter dated February 26, 1968, Allstate acknowledged receipt of Starr’s letter and stating that it was enclosing claim forms for his client. The forms were not then enclosed, but were subsequently sent and duly completed by Flaumenbaum and returned to Allstate.
On October 17,1968, Starr served on Allstate a notice of intention to arbitrate. On the 23d of October, Allstate instituted this special proceeding to stay arbitration. Pursuant to motions made at Special Term, the framed issues presented for determination were: (1) Whether (a) Flaumenbaum notified Allstate of the accident as soon thereafter as practicable and whether (b) he is chargeable with delay resulting from his failure to inquire into the existence of the Allstate policy; and (2) whether MVAIC is estopped by its failure to notify Flaumenbaum of its intention to disclaim for a period of “ sixteen” (actually slightly less than 15) months — from November, 1966 to February, 1968. Allstate moved at the conclusion of the trial to add a third issue, whether Flaumenbaum was a pedestrian — i.e., that he was not ‘ ‘ occupying ’ ’ the Lilac taxicab when injured. I denied the motion, but asked counsel (if the matter were pressed) to brief the point in their posttrial memoranda of law, and they have complied.
(II)
The first question is whether Flaumenbaum notified Allstate of the accident “ as soon [thereafter] as practicable ”, as required by the policy endorsement.
In New York, an injured party has a right, independent of that of the insured, to give notice of the accident to the insurer. *36 This right is granted by section 167 (subd. 1, par. [c]) of the Insurance Law, requiring every liability policy to contain a provision that ‘ ‘ written notice by or on behalf of the injured person or any other claimant * * * shall be deemed notice to the insurer ”.
In Lauritano v. American Fid. Fire Ins. Co. (3 A D 2d 564, affd. 4 N Y 2d 1028), the injured party, unaware first of the existence of insurance coverage and then of the identity of the insurer, did not give notice to the insurer for almost 13 months. The court found such notice to be timely under the circumstances. Speaking through Mr. Justice Botein, the court said (p. 568) that: 11 All members of this court are in agreement that the standards by which the notice given by the injured party must be judged differ from those governing notice given by the insured. The statute having granted the injured person an independent right to give notice and to recover thereafter, he is not to be charged vicariously with the insured’s delay (Pitts v. Aetna Cas. & Sur. Co., 218 F. 2d 58, 62 [2d Cir., 1954], cert, denied 348 U. S. 973). When the injured party has pursued his rights with as much diligence ‘ as was reasonably possible ’ the statute [Insurance Law, § 167, subd. 1, par. [d], providing that notice given after the period prescribed by the policy is nonetheless valid if given ‘ as soon as was reasonably possible ’] shifts the risk of the insured’s delay to the compensated risk-taker who can initially accept or reject those for whom it will bear such risks.
“ The injured person’s rights must be judged by the prospects for giving notice that were afforded him, not by those available to the insured. What is reasonably possible for the insured may not be reasonably possible for the person he has injured.”
I have previously had occasion to apply section 167 (subd. 1, pars, [c] and [d]) of the Insurance Law, as interpreted by Lauritano. In Cousins v. Liberty Mut. Ins. Co. (47 Misc 2d 413), the injured party’s attorney diligently sought to discover the identity of the insurer, if any. However, as the vehicle was registered in New Jersey (which did not at that time require filing of such information), and as the driver was unco-operative, the attorney was unsuccessful. He therefore filed a claim with the MVAIC.. Fourteen months later, O ’Connor, on behalf of MVAIC, informed the injured party’s attorney of the existence and identity of the insurer. On the same day, the attorney notified the insurer. As I noted in Cousins (p. 414): “The issue * * * is whether or not the defendant Liberty received due and timely notice, pursuant to the Insurance Law (§ 167, subd. 1, pars, [c] and [d]) ”. My conclusion was (pp. 416-417): *37 “ that * * * notice * * * was given as soon as was reasonably possible, and that the disclaimer by Liberty * * * was improper. Notice can hardly be given until there is knowledge of the facts upon which notice can be predicated, and the plaintiff sought to ascertain the facts with reasonable expedition and diligence. # * *
“ In my view, all the reasonably possible steps were taken by the plaintiff [the injured party]. Her counsel tried to notify Adams [the driver] by letter and summons. He also requested a New York State motor vehicle accident report (MV 104) which would have included the name of the insurance carrier. No such report was filed by Adams, and the plaintiff was unable to make contact with Adams; and therefore the plaintiff could not find out the name of her [Adams’] insurance company. The defendant Liberty does not even now suggest any reasonable steps which could have been undertaken that were not in fact taken.”
The case now before me seems to be identical to Cousins, as far as the significant facts are concerned. Here, as in Cousms, the attorney for plaintiff diligently sought to determine the existence and identity of an insurer. Here, as there, he was unable to do so — here because there was no car registered in the driver’s name, there because the car was registered out-of-State. Here, as there, the one party with the requisite knowledge, the driver, refused to co-operate. Here, as there, the insurer “ does not even now suggest any reasonable steps which could have been undertaken that were not in fact taken.” Here, as there, the attorney for the injured party gave notice on the day he discovered the existence and identity of the insurer.
The delay in giving notice to the insurer in the case at bar— 496 days from the date of the accident to the date Starr wrote to Allstate — is longer than the period of delay in Lauritano (387 days), although it is slightly shorter than the period in Cousins (504 days). In Kniep v. Providence Washington Ins. Co. (N. Y. L. J., June 26, 1969, p. 12, col. 3), the court cited séveral cases and specified the number of days that elapsed in each from the date of the accident to the date of notification. In my view, precedents are of value in showing the nature of the facts that will overcome delay in giving notice. However, it is of no conclusive moment whether the period in any decided case is somewhat shorter or a little bit longer than in the case sub judice. As the Lauritano court observed (p. 568): “ The passage of time does not of itself make delay unreasonable. Promptness is relative and measured by circumstance.”
That is the situation here; and, as the excuse offered for the delay in the case at bar is sufficient within the reasoning of *38 Lauritano, and is indistinguishable on the facts from Gousms, I hold that notice of the accident was given by Flaumenbaum to Allstate “ as soon as practicable ”, and that Allstate cannot escape arbitration on this ground.
(in)
Even had I found that Flaumenbaum did not give notice ‘ ‘ as soon as practicable ”, Allstate would nonetheless be unable to rely upon lack of notice to it of the accident as a basis for staying arbitration. For I find that Allstate, by its actions, waived its “ right ” to assert the “ late ” notice as a defense.
It is settled law in this State that, if the insurer, with full knowledge of the facts, acts in a manner inconsistent with a disclaimer of liability, it will be precluded from so disclaiming. As the Court of Appeals observed many years ago (Titus v. Glens Falls Ins. Co., 81 N. Y. 410, 419 [1880]): “When there has been a breach of a condition contained in an insurance policy, the insurance company may or may not take advantage of such breach or claim a forfeiture. It may, consulting its own interests, choose to waive the f orfeiture, and .this it may do by express language to that effect, or by acts from which an intention to waive may be inferred, or from which a waiver follows as a legal result. A waiver cannot be inferred from its mere silence.[2] It is not obliged to do or say anything to make the forfeiture effectual. It may wait until claim is made under the policy, and then, in denial thereof, or in defense of a suit commenced therefor, allege the forfeiture. But it may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as matter of law waived; and it is now settled in this court, after some difference of opinion, that such a waiver need not be based upon any new agreement or an estoppel.”
In Trippe v. Provident Fund Soc. (140 N. Y. 23), the insurer claimed that notice to it of the accident was neither timely nor sufficiently detailed, and hence that it had a valid defense under the policy. The court, holding the notice both sufficient and ■timely, added, as a basis of its decision, that the defense could not be asserted, for the company had waived it (p. 28): “ The *39 notice served on the 2d of September was retained without objection, and another served on. the 15th of October, after the plaintiff had been appointed administratrix. On the 12th day of October upon written application to the defendant [insurer] it furnished the necessary blanks for proofs of loss. These proofs were made and forwarded to the defendant in compliance with the terms of the contract, and were retained without objection. On the 19th of March following, the defendant called for further information, which was given. It is well settled that such defenses are waived when the company, with knowledge of all the facts, requires the assured by virtue of the contract to do some act, or incur some expense or trouble inconsistent with the claim, that the contract had become inoperative in consequence of a breach of some of the conditions.”
In Ellis v. Columbian Nat. Life Ins. Co. (270 App. Div. 143, 146, affd. 296 N. Y. 594), the court noted that, “ with full knowledge of the fact that the insured had not signed the proposed agreement [a rider limiting the insurer’s liability], the defendant [insurer] demanded and collected premiums on the policy for four years.” After quoting the passage from Titus v. Glens Falls Ins. Co. (81 N. Y. 410), set forth supra, the court rejected a defense based on the rider. In Foster v. Yorkshire Ins. Co. (255 App. Div. 829), the court held that “ If an insurance company, having knowledge of grounds of forfeiture, compels the insured to submit to an examination under a provision of the policy, it waives the forfeiture.” In Della-Posta v. New York Cas. Co. (276 App. Div. 770, 771), the court said: “By its letter of March 12th, defendant had recognized the continued validity of its policy, and had required action by its insured which it could only require by virtue of the policy. Consequently, defendant waived any lack of co-operation by reason of the facts stated in that letter, and could disclaim liability only if its insured, thereafter, should refuse or fail to co-operate. [Citing Titus, Trippe, and Ellis, supra].”
In New York Jurisprudence (vol. 31, Insurance, § 1556), it is said that: 11 An insurance company which, having knowledge of grounds of forfeiture, compelled the insured to submit to a-n examination under a provision of the policy, waived thereby the forfeiture. ’ ’
On this issue, the undisputed evidence in the instant <ydSe shows the following: On February 26, 1968, Allstate wr^ce to Starr, acknowledging receipt of his letter on the 9th, aiic*- stating that formal claim forms were enclosed. This was li0^ the fact, however; Starr telephoned Allstate, and the fyrrns were sent. On February 29, 1968, in Starr’s office, an agent of Allstate took *40 a written statement from Flaumenbaum concerning the accident. On June 6, 1968, a physician conducted a physical examination of Flaumenbaum, on behalf of Allstate, with regard to the injuries it was claimed he réceived in the accident.
I hold, on the basis of these facts, that the precedents herein-above cited compel the conclusion that Allstate has waived any right it may have had to disclaim. Its actions were taken with knowledge of all the relevant facts, which were fully set forth in Starr’s letter of February 9, and these actions were inconsistent with any intention to disclaim.
(IV)
Moreover, in addition to the affirmative indicia of intent to treat the policy as valid, there is the negative fact of failure on the part of Allstate to reserve rights, which reservation might have rebutted the implications of its acts as insurer (Mason-Henry Press v. Ætna Life Ins. Co., 211 N. Y. 489; Frank Knauss, Inc. v. Indemnity Ins. Co. of North Amer., 270 N. Y. 211; O’Dowd v. American Sur. Co. of N. Y., 3 N Y 2d 347).
Also, it appears that at no time prior to the institution of Allstate’s proceeding to stay arbitration — which was brought on by motion dated October 23, 1968 — did Allstate give any notice to the injured person, Flaumenbaum, or to his attorney, Starr, denying or rejecting the claim. I am satisfied that this unexplained delay of over eight months violated the requirement of subdivision 8 of section 167 of the Insurance Law — that an insurer give “ to the insured and the injured person or any other claimant ” “ written notice [of disclaimer] as soon as is reasonably possible ”.
Does it follow that the insurer is thereby prevented from disclaiming at a later time! The efficacy of a tardy disclaimer depends here on whether there must be prejudice resulting to the injured from the delay. The case law as to this point is, I think, unsettled.[3] In my opinion, the better rule is that, when an *41 insurer violates subdivision 8 of section 167, it thereby waives its. defense on the policy which a timely disclaimer would have preserved, even if no prejudice to the claimant has resulted from its failure duly to disclaim.
I have so concluded for several reasons. The first is that, the statute, in plain terms, expresses the policy of this State — that the claimant be notified of the insurance company’s rejection of the claim “ as soon as is reasonably possible ”. Were it the Legislature’s intent that such disclaimer might be made by the company at any time unless the claimant were prejudiced by the company’s delay, it would be a simple matter of legislative draftsmanship so to provide (cf., for example, Maryland Insurance Code, art. 48A, § 482).
The second is that, even in the absence of statute, prejudice to the claimant arising from delay of the insurer in disclaiming would nevertheless work an estoppel against the insurer (Ashland Window & Housecleaning Co. v. Mutual Cas. Ins. Co., 269 App. Div. 31; Greater N. Y. Mut. Ins. Co. v. Powers, 25 Misc 2d 393). To so read the statute as to hold that it requires prejudice in order to make the provision effective is to render the enactment superfluous.
The third reason is based upon my thought that the law ought at least to afford a claimant the same quality of rights against the insurance company that it affords the company against him. If he is tardy in notifying the insurer of the accident (as is asserted by the petitioner in the case at bar) it will not — under existing law — avail the claimant that the insurer was not prejudiced thereby; the insurer may nonetheless disclaim. (Deso v. London & Lancashire Ind. Co. of Amer., 3 N Y 2d 127; Matter of Lloyd [MVAIC], 27 A D 2d 396, affd. 23 N Y 2d 478.)[4] I am therefore of the view that, when the insurer’s disclaimer is unreasonably delayed, it ought to make no difference that the *42 claimant was not prejudiced thereby. It is but a just and fair reciprocal precept that he should be entitled to treat the disclaimer as invalid and the company’s defense as waived;
I therefore hold that, by virtue of subdivision 8 of section 167, an insurer who fails to give written notice of disclaimer “ as soon as is reasonably possible ” is thereby precluded from asserting, by way of action or defense, the ground upon which a timely disclaimer could have been based, without regard to whether the policyholder or injured claimant was prejudiced thereby.
(V) .
Having concluded that Allstate is liable to Flaumenbaum on its policy, I now consider the contention of Allstate that MVAIC should be responsible to Flaumenbaum for the alleged inexcusable delay on the part of MVAIC in not earlier informing Flaumenbaum of the existence of the Allstate policy. I do not agree with that submission under the facts in the case at bar, and in the light of my holding that Flaumenbaum is an “ insured person ”.
Flaumenbaum’s rights against MVAIC are dependent upon statute — the Motor Vehicle Accident Indemnification Corporation Law (Insurance Law, art. 17-A, §§ 600-626). That statute makes clear that its protection is limited to “ qualified ” persons (§ 608). The term “ qualified person ” is defined, in that part here relevant, as one “ other than an insured ” (§ 601, subd. b). Under subdivision i of section 601, an insured is stated to be a person defined as an insured under the coverage required by subdivision 2-a of section 167 of the Insurance Law, which mandates the uninsured motorist provision in liability insurance policies.
It is thus clear that Flaumenbaum has recourse against MVAIC only if he is a qualified person, and that he is not a qualified person if he is an insured person. As the Court of Appeals has observed (Matter of Knickerbocker Ins. Co. v. Faison, 22 N Y 2d 554, 558): “ The Legislature in enacting article 17-A of the Insurance Law set up the mutually exclusive categories of ‘ Insured ’ persons and ‘ qualified person[s] ’. (Insurance Law, § 601, subds. b, i; Matter of Edwards v. MVAIC, 25 A D 2d 420 [1st Dept., 1966].) ’’
Flaumenbaum, therefore, has no recourse against MVAIC under the statute. Nor does he have a cause of action based on estoppel or waiver. In Simpson v. Phoenix Mut. Ins. Co. (30 A D 2d 265, 268, affd. 24 N Y 2d 262), the Appellate Division *43 said: “It is settled law that waiver or estoppel may not he invoked to create insurance coverage where none exists under the policy as written (see Insurance Law, § 142; Draper v. Oswego Co. Fire Relief Assn., 190 N. Y. 12; Miller v. American Eagle Fire Ins. Co., 253 N. Y. 64; Horrmann v. Prudential Ins. Co., 192 Misc. 758, 763; Ann. 1 ALR 3d 1139).”
The decision in Matter of Allstate Ins. Co. (Coletti) (53 Misc 2d 618), heavily relied upon by Allstate in its present submission, cites no authority, and is in effect rejected by the later case of Simpson (supra).
I therefore hold that Flaumenbaum is without recourse against MVAIC.
(VI)
The thrust of one of Allstate’s arguments — both at trial and in its post-trial memoranda in support of its contention that MVAIC, and not Allstate, should be held accountable to Flaumenbaum (see part V, supra),— seems to be that MVAIC owed it (Allstate) a duty promptly to investigate into the existence of a policy such as the one here in question, and that by virtue of.the failure of MVAIC duly to discharge that duty, to the undeniable prejudice of Allstate, MVAIC has become liable to Allstate. While I have rejected Allstate’s demand in this regard (which sounds very much like an equity bill for exoneration), the proper case, it seems to me, for any such claim by Allstate against MVAIC — whether for exoneration or indemnification — would be one in which it were asserted by Allstate directly against MVAIC.
The CPLB makes ample procedural provision for claims to be asserted by one party against a third party brought in by an original defendant or respondent (CPLR 401, 402, 1009). There was no such application or pleading here. I therefore do not reach the issue of whether MVAIC owed any duty to Allstate, whether such duty (if extant) was breached, and whether MVAIC must indemnify Allstate for whatever the arbitrator may award to Flaumenbaum. My conclusion is that Allstate has no recourse against MVAIC in this proceeding.
As I have hereinbefore indicated, Allstate moved, at the conclusion of the trial, to .amend the pleadings to add a third issue: That Flaumenbaum was a pedestrian and hence not within the coverage of the policy at the time of the accident.
The record discloses that I then stated %
*44 “ Before the commencement of this trial, as my notes show, Mr. Starr asked, counsel whether it was necessary that Mr. Joseph Flaumenbaum, the respondent, remain in court. All * * * counsel excused him [he being about 89 years of age].
“ Now unquestionably, <as I see it, it may be that if one party or the other, or any of the three parties, relies upon anything other than the documentary material presented to me as to the precise circumstances at the time that Flaumenbaum was struck by this hit-and-run car, Flaumenbaum’s testimony may be relevant and material in the disposition of this matter.”
I denied the motion to amend and to include the newly alleged framed issue on several grounds, which, at the time, I enumerated as follows:
“ First, I believe there is no basis upon which the movant has been exculpated from the obvious laches in the presentation of its application.
“ Second # * * there is prejudice, quite obvious in this situation, to the respondent Flaumenbaum and to the respondent MVAIC.
“ And third * * * even were the motion to be granted it seems clear to me that, on the question as to whether Flaumenbaum was, as you [Allstate] claim, a pedestrian, it is my view that he was obviously not.”
Upon the post-trial briefs submitted by counsel, and[1] upon further consideration, I have reached the same conclusion, and for the same reasons. I reiterate my holding that the motion to amend be denied.
(VIII)
If, ¡however, Flaumenbaum were indeed a pedestrian, he is not (as will now be seen) within the coverage of the insurance policy. I therefore find it appropriate to consider and decide the issue of the status of Flaumenbaum at the time of the accident, notwithstanding my denial of the motion to amend the pleadings so as to add this as a framed issue.
The definition of “ insured ” is set forth at length in the policy endorsement.[5] If Flaumenbaum is to be covered, it is clear that he must come within the definitional clause requiring that he was “ occupying ” the vehicle at the time of the accident. The word “ occupying ” (the endorsement states) “ means in or upon or entering into or alighting from.” The requirement of “ occupying ”, and the definition thereof, are the same as the provision of the Motor Vehicle Accident Indemnification *45 Corporation Law (Insurance Law, § 617), governing coverage by the MVAIC of an “ uninsured ” or “qualified” person.[6] I therefore consider the meaning of ‘ ‘ occupying ’ ’ in the endorsement and in the statute to be identical.
On the basis of the uncontested evidence in the case at bar, I find the following circumstances existing at the time of the accident: Flaumenbaum and his wife were passengers in the Lilac taxicab, which had pulled up in front of the Flaumenbaum residence in Brooklyn. Flaumenbaum stepped out of the cab, leaving the door open in order to pay the fare and for his wife to exit. He was making payment to the driver when an unknown vehicle hit the cab. The open door struck Flaumenbaum, throwing him to the ground. As a result of his contact with the door, the pavement, or both, Flaumenbaum sustained certain injuries which are the basis for his claims herein against Allstate and MVAIC.
I hold, on these facts, and on the legislative and insurance policy definition hereinbefore referred to, that there are at least two bases for concluding that Flaumenbaum was “ occupying ” the cab. The first is that the injuries resulting to Flaumenbaum were caused by the door’s contact with him, either immediately by the door itself, or proximately by being thrown by or from the door to the pavement at the time of such contact with the door. Flaumenbaum was then “ upon ” the cab, and therefore “ occupying ” it.
I have found no appellate authority in point, but I do advert ■to two cases at the trial level which may be helpful. It was observed in a case construing section 617: ‘ ‘ Says the statute, ‘ The word ‘ ‘ occupying ’ ’ means in or upon or entering into or alighting from. ’ Obviously the latter language embraces a situation where the injured party fell or jumped from a motor vehicle.” (Flores v. MVAIC, 32 Misc 2d 884, 886.) And in Matter of Shindler v. MVAIC (41 Misc 2d 590), plaintiff alleged that the door of an unidentifiable taxicab from which she was disembarking closed on her clothes, and that she sustained injuries when the driver negligently drove off, dragging her by her clothes. MVAIC argued in that case that it was not liable because the injuries resulted from physical contact with the street and not the vehicle. The court rejected this contention as without merit, finding this a stronger case than Flores (supra).
I need not, however, limit my conclusion that Flaumenbaum was “ occupying ” the cab solely on his contact with the vehicle. *46 For I hold that, under the circumstances here proved, one can come within the definition of ‘ ‘ occupying ’ ’ a vehicle, even when he is not in physical contact with it. I am of the view that a person has not ceased “ occupying ” a vehicle until he has severed his connection with it — i.e., when he is on his own without any reference to it. If he is still vehicle-oriented, as opposed to highway-oriented, he continues to [1] ‘ occupy ’ ’ the vehicle.
A similar standard seems to have been applied in State-Wide Ins. Co. v. Murdock (31 A D 2d 978, affd. 25 N Y 2d 674) where the court said (pp. 978-979): “In our opinion, where a panel truck had stalled and the operator had raised the hood of the motor to attempt to start the engine and a passenger alighted from the truck to walk toward the front of the truck and was struck by a hit-and-run vehicle within four or five seconds after alighting from the truck, the passenger was ‘ occupying ’ the truck within the meaning of section 617 of the Insurance Law and the New York Automobile Accident Indemnification Endorsement ”.
It is clear in Murdock that, at the time of the accident, there was no physical contact by the injured person with the vehicle he was held to be “ occupying ’ \
In Matter of MVAIC v. Oppedisano (41 Misc 2d 1029), the claimant had been an occupant of his vehicle just prior to the accident and he intended to and would have continued as occupant but for the wrongful impact. At page 1029, the court said: ‘ ‘ His alighting from his vehicle for the purpose of releasing his vehicle which had skidded off the road and into high snow did not take him out of the category of [1] occupant ’. It is inconceivable that this short, temporary, enforced break in the occupancy of his vehicle for the express purpose of continuing his occupancy should take these facts out of the protection intended by the Legislature ’ ’ — and contractually afforded by the insurance carrier when it adopted in its policy and endorsement the same phraseology for coverage.
While neither Murdock nor Oppedisano specifies that branch of the definition of ‘ ‘ occupying ’ ’ into which its respective facts fall — although the language of each apparently rules out “alighting from ” — it would appear that each considers its injured party to have been “ in ” the vehicle, even if literally outside of it, because the passenger had alighted in mid-trip due to unexpected circumstances, and he fully intended to re-enter. Counsel for Allstate attempts to distinguish Murdoch from the ease at bar, pointing out that Flaumenbaum had reached his destination.
*47 This purported distinction is without merit. In Murdock and in Oppedisano, the respective parties were held to be still “ in ” their vehicles although they were fortuitously and temporarily outside of them at the time of the accident. In other words, they were still vehicle-oriented. In the case at bar, the facts show that Flaumenbaum was vehicle-oriented in that he was 1 ‘ alighting from ’ ’ the cab at the moment of the accident. That he had reached his destination may disprove a contention that he was “ in ” the taxi, and thus Murdock and Oppedisano may be distinguished on this narrow ground; but this fails to take into account the broader principles to which I have adverted when applied to the circumstance that Flaumenbaum was “ alighting from ” the vehicle. The cab door was still open — indeed, it was the immediate cause of his injuries — and I may safely infer that the passenger intended, after he paid the fare to the driver, to do the usual and to close the door. And again, I may make a safe assumption, that he did not intend to walk away from the cab towards bis residence until he had completed paying the driver and receiving whatever change was due him, and, perhaps, assisting (or at least awaiting) the exiting of his wife from the cab. In short, he was still vehicle-oriented; and therefore I hold he was still occupying or alighting from the cab and thus he is within the coverage of the Allstate policy.
In other areas of the law, it has been held that a common carrier (which, of course, a taxicab is) owes a certain duty of due care to a passenger — and who is or who is not a passenger in any particular set of circumstances has received judicial attention.
In New York Jurisprudence (vol. 7, Carriers, § 274), this pertinent résumé is made: ‘‘ The relationship of carrier and passenger, once established, will not ordinarily terminate until the passenger has reached his destination, alighted from the conveyance, and had a reasonable opportunity to leave the place at which he alights. The carrier-passenger relationship is not terminated merely by the fact that the person transported has been carried to his destination if, for example, such person is in the act of paying, or negotiating with respect to the payment of, his fare, or is claiming his baggage, alighting, or leaving the place at which he alighted.”
Some cases on this subject are also collated in volume 1 of New York Pattern Jury Instructions (2:160). They need not now be recorded. Suffice it to say that being aboard the vehicle is not a sine qua non to the status of being a “ passenger ”. That principle, by analogy, is, I think, applicable in this case *48 to the definition of “ occupancy ” vis-a-vis the common carrier’s vicarious insurance carrier.
(IX)
Although not specifically encompassed in the orders directing a hearing — but within the ambit of the issue as to whether Flaumenbaum is covered by the policy endorsement issued to the wife of the taxi driver — Allstate presents the argument in its post-trial briefs that there is no such coverage because there was no showing that Emanuel Shufrin, the cab driver and husband of the policyholder Pearl Shufrin, was a resident of the same household as his spouse.
The claim that Flaumenbaum is within the terms of the endorsement can be based only on the clause therein defining an ‘1 insured ’ ’ as one occupying an automobile operated by the named insured or “ such spouse”. The qualifying word “such” refers to a previous clause speaking of “ the named insured and, while residents of the same household, his spouse and the relatives of either ”.[7] Thus, while Allstate is correct in its contention that Flaumenbaum is not within the coverage of the policy unless Emanuel Shufrin resided with his wife, it is incorrect that such matrimonial residence has not been adequately demonstrated.
I recognize that the simplest rebuttal of Allstate’s argument would be to point out (as I have) that the question of the Shufrin domestic situation is not one of the framed questions before me. Furthermore, if Allstate in good faith wished to maintain that the Shufrins did not in fact reside together, that issue should have been raised before or at least at the hearing.
However, as I have noted,[8] a cause of action cannot be based on estoppel or waiver. If the Shufrins were not of the same household at the time of the accident, then Flaumenbaum is not within the terms of the policy, and hence Allstate ought not to be required to arbitrate, any more so than if Flaumenbaum were not “ occupying ” the cab and thus without the scope of the endorsement. I therefore proceed to consider Allstate’s claim that there has been a failure of proof that Mr. and Mrs. Shufrin did reside together.
I hold that (at least in a case in which there is not involved a controversy between the spouses) there is a presumption that husband and wife live together, and, therefore, in the absence of proof to the contrary — and there is none in this case — I find that the Shufrins are- “ residents of the same household ”.
*49 Presumptions are a form of legal fiction indulged in by the courts on occasion for various reasons. I call them ‘ ‘ fictions ’ ’ because they permit the establishment of Fact B, without the necessity of presenting direct proof of that fact, but by showing the truth of Fact A. We reach the factual conclusion “ B ” from the factual premise “ A ” because experience tells us we may, or because of reasons of sound public policy.
Thus, for example, there is a presumption that a letter mailed is delivered,[9] and that a person is dead after a number of years ’ unexplained absence,[10] because our experience is that this is almost invariably the case. And there is a presumption that a man and woman living together are married to each other* [11] — the converse of the proposition before me — because public policy demands definitive proof of acts constituting immoral or illegal conduct or calling into question the legitimacy of a child, and the courts will therefore not accept an unproved conclusion that the parties are not intermarried.
For reasons of both experience and policy, a presumption exists in the instant case as well. At least, until there is some proof of separation (cf. Gleason v. Gleason, 26 N Y 2d 28) experience tells us that in the overwhelming majority of cases, a husband and wife will dwell in the same household. And sound reasons of public policy dictate the same conclusion. The institution of marriage is of such high social significance that the law will always attribute certain characteristics to the husband-wife relationship, and sometimes will even ignore proof as to the non-existence of these characteristics. Thus, because the intimacy of the marriage might otherwise be adversely affected, courts in New York cannot hear revelations of inter-spousal confidences (CPLR. 4502, subd. [b]; see People v. Daghita, 299 N. Y. 194, 198) — and proof that the marriage is not intimate, that no real relationship remains to be protected, will not make the evidence admissible.
As the United States Supreme Court noted in Griswold v. Connecticut (381 U. S. 479, 486), when striking down a State statute prohibiting the use of any drug or article to prevent contraception: “ We deal with a right of privacy older than the Bill of Rights — older than our political parties, older than *50 our school system. Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions.”
In Griswold, the appellants were the director of a planned parenthood organization and a doctor seeking to recommend contraceptives to his patients. The issue before the court did not therefore hinge upon any particular marriage relationship, but upon the institution in general. Yet the United States Supreme Court found sufficient attributes to be ascribed to the state of matrimony as would justify holding unconstitutional a Connecticut statute. I therefore feel that the protective attitude of the law towards the marital relationship, and the marital intimacy that the law is so willing to assume, justify a presumption in a nonmatrimonial dispute that a husband and wife are members of the same household.
Even if I go too far in holding that there is a presumption which would require me to find that the Shufrins, as husband and wife, are members of the same household, I have no doubt that the reasons of experience and policy justify at least an inference to that effect — that is, in the absence of evidence to the contrary I may — although I need not — find that they reside together. Whether presumption or inference is to be relied upon,[12] I do so find.
The upshot is that the contention of Allstate that there is failure of proof in that regard is overruled.
(X)
On the whole case, I hold that Flaumenbaum comes within the terms of the policy endorsement, in that he was occupying the taxicab involved at the time of the accident and in that the driver was a resident of the same household as his wife, to whom the policy was issued; that Flaumenbaum is not chargeable with delay for failure to inquire into the existence of the policy; that he gave Allstate notice of the accident as soon as practicable; that he has no claim against MVAIC; that Allstate has no recourse in this proceeding against MVAIC; and that the order heretofore issued staying arbitration should be and is hereby vacated.

. The insurance policy clause involved reads as follows: “ The company will pay all sums which the insured * shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury * * * sustained by the insured, caused by accident arising out of the ownership, maintenance or use of such uninsured automobile ”.
The word “ insured ” is stated to mean, in relevant part, “ the named insured and, while residents of the same household, his spouse ” and “ any other person while occupying ” any “ automobile while being operated by the named insured or such spouse ”.
The term “ uninsured automobile ” includes “ a hit-and-run automobile ”.
The word “ occupying ” “ means in or upon or entering into or alighting from ”,

. This passage expresses the. common-law rule. As to the present state of the law on this point, see subdivision 8 of section 167 of the Insurance Law, enacted in substance in 1958 (discussed in Part IV of this opinion, infra).

. Expressly holding that prejudice is required before the insurer will be defied its defense are Merchants Mut. Cas. Co. v. Wildman (21 Misc 2d 1073); Royal Ind. Co. v. Kay (48 Misc 2d 1086) and Mundry v. Great Amer. Ins. Co. (369 F. 2d 678).
In Appei v. Liberty Mut. Ins. Co. (22 A D 2d 906, 907, affd. 17 N Y 2d 519) the court fotuq prejudice, but did not expressly hold that the result would have been different ^ its absence. Furthermore, the prejudice found — “that, in reliance upon Libt,#yg [the insurer’s] failure to make a timely disclaimer of its liability, the plamvffg [claimants] proceeded with the labor and expense of prosecuting their unfru^j aetión against the McConneys, Liberty’s assured ” — appears to be insubstan^ In Matter of Kelly v. MVAIC (30 A D 2d 516) the court barred assertion or, defense by the insurer because of its late dis *41 claimer. The only mention of prejudice to petitioner, the injured party, was that “ claimant could well be prejudiced ”. This could, but need not be, read as allowing the insured to assert the claim only if it sustains the burden of showing the absence of prejudice.
Several decisions have apparently read the statute as barring the assertion of a defense whenever a written disclaimer is not issued within a reasonable time. (Allstate Ins. Go. v. Gross, 31 A D 2d 389; Messina v. Atlantic Mut. Ins. Go., 26 Mise 2d 1059; Kniep v. Providence Washington Iris. Go., N. Y. L. J., June 26, 1969, p. 12, col. 3). None of these opinions mentions prejudice to the insured or injured party.
Allstate Ins. Co. v. Manger (30 Mise 2d 326) holds that, in the absence of prejudice, the defense may be asserted. Manger may stand for the proposition that, even if prejudice is shown, the defense may nonetheless be asserted.

. As to the law of another jurisdiction, see National Grange Mut. Ins. Co. v. Lipscomb (N. Y. L. J.) Jan. 6, 1970, p. 17, col. 1, p. 18, col. 1).

. See note 1, supra.

. See part V, supra.

. The endorsement is set out at greater length in n. 1, supra.

. See part V, supra.

. News Syndicate Co. v. Gatti Paper Corp. (256 N. Y. 211); Trusts & Guar. Co. v. Barnhardt (270 N. Y. 350); Dulberg v. Equitable Life Assur. Soc. of U. S. (277 N. Y. 17).

. The requisite period at common law was seven years (Butler v. Mutual Life Ins. Co., 225 N. Y. 197). This has been shortened by statute to five years (EPTL 2-1.7).

. Hynes v. McDermott (91 N. Y. 451); Boyd v. Boyd (252 N. Y. 422); Matter of Myers v. Tuttle (278 App. Div. 543).

. The sometime confusion between a presumption and an inference is referred to in George Foltis, Inc. v. City of New York (287 N. Y. 108, 121).