## GOVERNMENT EMPLOYEES INSURANCE COMPANY

v.

## KEYSTONE INSURANCE COMPANY.

### Civ. A. No. 76–3496.

United States District Court, E. D. Pennsylvania.

Dec. 15, 1977.

---

ist, Charles Easton. Defendant, Keystone Insurance Company, was the insurer of the automobile in which Donohue had been a passenger just prior to the accident. Donohue filed a claim against GEICO pursuant to his policy. GEICO notified Keystone of the claim, and informed Keystone that it considered the Keystone policy to provide the primary coverage. Keystone rejected this contention.

Donohue then filed an arbitration demand with the American Arbitration Association against GEICO. GEICO filed a declaratory judgment action in this court seeking to have Keystone declared primarily liable for coverage. Judge Broderick ruled that the suit was premature, and dismissed the action, suggesting GEICO could bring another action if necessary after completion of arbitration proceedings. GEICO then settled with Donohue, and filed this action.

We are called upon to make findings of fact and conclusions of law after a non-jury trial. The gravamen of plaintiff's claim is that Donohue, though some distance from the car in which he had been riding was still a passenger therein under the terms of defendant's policy. We reject this contention and, therefore, find in favor of the defendant.

## FINDINGS OF FACT

1. On September 9, 1973, at approximately 12:25 A. M. James Donohue was a passenger in a motor vehicle being operated by Daniel Murray and owned by Alberta Murray.

2. On September 9, 1973, James Donohue was an insured under an automobile liability policy issued by Government Employees Insurance Company, policy No. 68–34–45, which policy contained coverage for PROTECTION AGAINST UNINSURED MOTORIST.

3. The car owned by Alberta Murray, on September 9, 1973, was insured by Keystone Insurance Company, which policy contained coverage for PROTECTION AGAINST UNINSURED MOTORIST.

Francis F. Quinn, Philadelphia, Pa., for plaintiff.

Gerald J. Cohen, Philadelphia, Pa., for defendant.

## MEMORANDUM

JOHN MORGAN DAVIS, Senior District Judge.

This is a diversity of citizenship case brought pursuant to 28 U.S.C. § 1332 to enforce an insurance contract. Plaintiff, the Government Employees Insurance Company (GEICO) was the personal insurer of one James Donohue at the time he was struck and injured by an uninsured motor-

4. The policies issued by Government Employees Insurance Company and Keystone Insurance Company, as they related to PROTECTION AGAINST UNINSURED MOTORIST, are basically identical in wording.

5. Charles Easton, on September 9, 1973, at approximately 12:25 A. M. was operating his motor vehicle in an easterly direction on Linden Avenue near Academy Road, Philadelphia, Pennsylvania.

6. Charles Easton, on September 9, 1973, did not carry automobile liability insurance on the motor vehicle that he was operating at the time.

7. Charles Easton had been driving erratically for some distance.

8. At some point on Linden Avenue, the motor vehicle operated by Charles Easton slowed down, or came to a complete stop, with the motor vehicle operated by Daniel Murray directly behind said vehicle.

9. The motor vehicle operated by Daniel Murray had been following the car operated by Charles Easton for at least a mile prior to the accident.

10. The motor vehicle operated by Daniel Murray had been following the Easton car too closely during this time. This practice is commonly known as "tailgating."

11. After the Easton vehicle stopped, James Donohue got out of the Murray vehicle, walked along the right side of the Easton vehicle, and half-way across in front of that car.

12. The purpose of Donohue's approach was to engage in a physical confrontation with Easton.

13. Donohue made threatening gestures toward Easton, and may have been carrying some kind of instrument in his hand.

14. At that point, Easton accelerated his vehicle, and Donohue jumped on the hood.

15. Easton then stopped his car suddenly for the purpose of causing Donohue to fall off the hood.

16. Donohue fell off the hood of the car and suffered fractures of the right wrist and right heel.

17. James Donohue was treated at Nazareth Hospital by Dr. Joyce Cantilli, whose medical bills totalled $1,481.00.

18. At the time of the incident, James Donohue was employed, and was put out of work by the incident and lost wages amounting to $919.00.

19. Government Employees Insurance Company, prior to the instituting of the present suit, instituted a Declaratory Judgment action in the U.S. District Court, Eastern District of Pennsylvania, C.A. No. 75–668, against defendant, Keystone Insurance Company, and other parties including James Donohue, Alberta Murray, Daniel Murray and Charles Easton and the American Arbitration Association.

20. Judge Broderick, on Motion of defendant Donohue, dismissed the Declaratory Judgment action instituted by Government Employees Insurance Company.

21. An Order signed by Judge Broderick on December 31, 1975, permitted Government Employees Insurance Company to seek judicial determination of its claim that Keystone was primarily liable to James Donohue if an arbitrator ruled Government Employees Insurance Company was liable to James Donohue.

22. Government Employees Insurance Company voluntarily settled the case with their insured, James Donohue, for an amount of $8,519.00.

23. The settlement of this case in these amounts was reasonable in view of the facts and the injuries.

## DISCUSSION

Before beginning discussion of the issues of this case, I feel obligated to note that this is the type of case that cries out for mandatory inter-company arbitration. The issues of law are not unduly complex, and the amount in controversy is not particularly great. Further, there was little testimony taken at the very brief trial, yet hours were required on the part of the court in preparing for and deciding the case. All of this could have more easily been accom-

plished by experienced arbitrators, freeing the court to tend to an already crowded calendar. One can only hope that cases such as this will be few and far between.

The issue in this lawsuit is a fairly straightforward one—did Donohue remain a passenger in the Murray vehicle, subject to the coverage of Murray's Keystone Insurance, even though he had left the vehicle and was some distance away from it? If we find that Donohue was still a passenger, plaintiff must prevail; if we find he had become a pedestrian, our judgment must be for the defendant.

The Keystone policy with which we are concerned provides both uninsured motorist, and medical payments coverage. The relevant provisions of the uninsured motorist protection are as follows:

"Coverage H-Uninsured Motorist (Damages for Bodily Injury).

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured caused by the accident and arising out of the ownership, maintenance or use of such uninsured automobile . ."

An insured is defined to include, "any other person while occupying an insured automobile." And *"occupying"* means "in or upon or entering into or alighting from." The provisions of the medical payments protection are substantially similar.

Plaintiff contends, and cites cases in support of its contention, that the courts have broadened the meaning of the word "occupy" in auto insurance policies to cover situations such as the one with which we are faced. In *Young v. State Auto Ins. Assoc.,* 72 D. & C. 394, 1 Lycoming 191 (1947), the insured was struck by his own automobile as he was attempting to open his garage door. The car had been accidently started by his wife, and after striking him, the car dragged him through the rear of the garage and across two adjacent lots. The policy in that case was much like the one involved here, and the court held that plaintiff could recover despite having separated himself physically from the car before the accident.

■ Plaintiff further notes that an extension of the meaning of the word "occupy" as it relates to automobile insurance policies has taken place in numerous other jurisdictions. See, e. g., *Nickerson v. Citizens Mut. Ins. Co.,* 393 Mich. 324, 224 N.W.2d 896 (1975); *State-Wide Ins. Co. v. Murdock,* 25 N.Y.2d 674, 306 N.Y.S.2d 678, 254 N.E.2d 908 (1969); *Moherek v. Tucker,* 69 Wis.2d 41, 230 N.W.2d 148 (1975); *Newcomb Hosp. v. Fountain,* 141 N.J.Super. 291, 357 A.2d 836; *Allstate Insurance Company v. Flaumenbaum,* 62 Misc.2d 32, 308 N.Y. S.2d 447 (1970). The common thread of reasoning which permeates this line of cases is well illustrated by the following quote from the *Allstate* case, *supra* :

". . . a person has not ceased 'occupying' a vehicle until he has severed his connection with it—i. e., when he is on his own without any reference to it. If he is still vehicle-oriented as opposed to highway oriented he continues to 'occupy' the vehicle." 62 Misc.2d at 46, 308 N.Y.S.2d at 462.

We find this reasoning persuasive, and in light of the lack of Pennsylvania authority directly on point, we adopt it as our own.

Now, applying the facts as we have found them to the law which we have just enunciated, we must determine if Donohue had severed his connection with the Murray vehicle before he was injured by Easton. And based on our opinion of the credibility of the witnesses, we are forced to conclude that he had.

Only two witnesses, Donohue and Easton, testified, at the trial on this matter. Each told a story completely in contrast to that of the other. Each cast himself as the innocent victim of the other's malice, Donohue asserting himself as a wronged good samaritan, who was just trying to assist Easton; Easton alleging that he merely attempted to flee a threatening attacker. We believe that the truth is somewhere

between these two extremes. Donohue undoubtedly got out of the Murray vehicle for the purpose of attacking Easton, or at least of precipitating some kind of confrontation. Easton, justifiably believing he was about to be attacked, accelerated his vehicle and attempted to run down Donohue. Donohue jumped on the hood to avoid being run over, but was thrown off when Easton stopped suddenly.

■ It is ludicrous to believe, under the above described circumstances, that Donohue retained any connection with the Murray vehicle for insurance purposes. When Donohue exited the Murray car to engage in a fight with Easton he ceased to be vehicle-oriented, and became, instead, highway-oriented. This situation is nothing like those found in the cases cited by plaintiff. In those cases, the activity of the insured was, in some way, related to the vehicle itself, such as opening the garage door for the subject vehicle, *Young, supra;* paying the driver of a cab from which the victim had just emerged, *Allstate, supra;* or attempting to push the victim's stalled vehicle, *Moherek, supra.* Here the only connection between Donohue and the Murray vehicle at the time of the injury was that Donohue had been riding in that vehicle when he decided to assault the person who subsequently injured him. This is not enough to hold the defendant liable.

Defendant made two motions during the trial which were taken under advisement by the court. One was a motion to dismiss on the ground that this court was not a proper forum for the case. The other was a motion for a non-suit, moved for after the close of plaintiff's case. In light of our decision in this case, the motions are moot, and are hereby dismissed.

### CONCLUSIONS OF LAW

1. This court properly has jurisdiction to decide this dispute between the insurance companies, even though this court should not be called upon to do so.

2. The accident in question was caused by the negligence of James Donohue and Charles Easton.

3. At the time of the accident, James Donohue was no longer an "occupant" of the Murray vehicle according to the terms of the Keystone Insurance Company policy, as he had severed his connection with the Murray vehicle.

4. The coverage provided by the Government Employees Insurance Company was the primary coverage for James Donohue at the time of this incident.