OPINION OF THE COURT
David Goldstein, J.
This is a motion by defendants for an order pursuant to *849 CPLR 3212 (b), granting summary judgment dismissing the complaint in this declaratory judgment action.
The action was brought to declare the rights of the parties with respect to the obligations to defend and indemnify Ryder Truck Rental (Ryder) in the underlying action brought by Salvatore Samaritano. The Samaritano action, pending in this court, was commenced in 1985 and was settled in 1992, two years after this action was brought for a declaration of rights as against Ryder and its insurer, Old Republic Insurance Company (Old Republic).
The underlying facts are not in dispute. On September 20, 1985, Ryder retained NTC of America, Inc. (NTC) to transport one of Ryder’s straight trucks from South Carolina to New York. Under the agreement, NTC was obligated to obtain insurance coverage which was to name Ryder as an insured. NTC hired Charles Behrens to drive the truck to New York and, on September 22, 1985, while the vehicle was still in transit, it was involved in an accident on the Long Island Expressway at Greenpoint Avenue. Immediately thereafter Samaritano commenced an action to recover for personal injuries sustained in that accident.
At the time of the accident, NTC was insured under a business automobile policy which was issued by plaintiff, National Indemnity Company (National), who undertook to defend the Samaritano action on behalf of Ryder and Behrens. Initially, this was without a reservation of rights. It was not until December 27, 1988, three years later, that National advised Ryder that coverage might not exist and a reservation of rights letter was sent. Suggesting that the vehicle might not fall within the definition of a "covered auto” in the NTC policy, National advised it would continue its investigation as to coverage and would also continue to represent Ryder in the pending action, provided such was not construed as a waiver or estoppel of the insurer’s rights under the policy, including the right to withdraw at any time. On April 12, 1989, three and a half months later, Ryder demanded that National continue with the defense of the underlying action.
This action for declaratory judgment relief was commenced on August 7, 1990. In its complaint, National alleges that coverage was provided to Ryder by a comprehensive automobile liability policy issued by Old Republic and that the NTC policy did not cover Ryder as an additional insured, nor did it insure Ryder’s vehicle, which NTC had been hired to trans *850 port. As a result, National sought to withdraw from the defense of the pending personal injury action, which, it argued, should be assumed by Old Republic, as the primary insurer. It is alleged that National’s policy to NTC covered only vehicles owned by, hired to or borrowed by NTC. The Samaritano action was settled more than two years later, on November 10, 1992, in the sum of $300,000. The primary issue here is the relative responsibility of the parties and their insurers with respect to that settlement.
In moving for summary judgment, Ryder and Old Republic contend that it would be inequitable to permit National to disclaim, especially after having assumed the defense of the underlying action for three years, without any reservation of rights, and having continued the defense for two additional years before seeking to disclaim. It is argued that the disclaimer was ineffective since it was not as soon as was reasonably possible, as is required (see, Hartford Ins. Co. v County of Nassau, 46 NY2d 1028, 1029; Matter of Nationwide Mut. Ins. Co. v Steiner, 199 AD2d 507; Kramer v Interboro Mut. Indem. Ins. Co., 176 AD2d 308; U.S. Liab. Ins. Co. v Staten Is. Hosp., 162 AD2d 445).
Thus, it is claimed that, notwithstanding that National had notice or knowledge of the ground for disclaimer throughout this period of time, it continued the defense for five years before seeking to disclaim coverage. This, according to Ryder, was prejudicial since the attorneys in the underlying action did not implead NTC, who was "a viable third party” as a result of the failure to procure insurance naming Ryder as an insured. Nor could Ryder turn to Old Republic, since it (Ryder) (1) placed only a $1 reserve on the case, relying upon the continuation of the defense by National, and (2) did not give Old Republic notice of the accident until August 24, 1990, after this declaratory judgment action had been commenced and more than two years after the reservation of rights letter.
Contrary to the claim, on the surface, there does not appear to be resulting legal prejudice here. If a viable claim does exist as against NTC for any failure to secure insurance on behalf of Ryder, to the extent that could have formed the basis of a third-party claim in the Samaritano action, Ryder is not without available remedy. The underlying action was settled in November 1992, less than three years ago and, as far as appears, is still a viable claim. Although it is argued that a third-party claim could have been brought against NTC, as of this date, the applicable period of limitations on a claim for *851 contribution or indemnity has not expired. Also, to the extent there are any consequences by reason of any delay or failure to give notice to Old Republic, Ryder has only itself to blame for deferring or delaying such notice as was required in accordance with its obligations as an assured. These, however, are factual matters, inappropriate for final resolution upon motion for summary judgment.
The primary argument advanced is that, by assuming the defense of the underlying case during a time when National knew or should have known that the Ryder truck was not within the coverage of the policy, National waived any such defense and, therefore, should be precluded from denying coverage.
Under this general principle, well recognized in this State for more than a century, where an insurer, with knowledge of the existence of a ground to void a policy, acts in recognition of the validity of the insurance, the carrier will be precluded from declaring a forfeiture (Titus v Glens Falls Ins. Co., 81 NY 410, 419 [1880]; Roby v American Cent. Ins. Co., 120 NY 510; Gibson Elec. Co. v Liverpool & London & Globe Ins. Co., 159 NY 418). Stated somewhat differently, "if the insurer, with full knowledge of the facts, acts in a manner inconsistent with a disclaimer of liability, it will be precluded from so disclaiming.” (Matter of Allstate Ins. Co. v Flaumenbaum, 62 Misc 2d 32, 38.)
As was recognized by the Court of Appeals, the waiver principle evolved as a result of the "courts’ disfavor of forfeitures of the insured’s coverage which would otherwise result where an insured breached a policy condition, as, for instance, failure to give timely notice of a loss or failure to co-operate with the insure[r].” (Schiff Assocs. v Flack, 51 NY2d 692, 698.) Thus, the waiver doctrine will be invoked where there is proof, actual or circumstantial, that the insurer intended to abandon or, at least, not to rely upon a particular defense. In addition, reliance upon one stated ground will result in a waiver of unspecified grounds as well (see, Appell v Liberty Mut. Ins. Co., 22 AD2d 906, affd 17 NY2d 519).
Nevertheless, it is clear that waiver may not apply to create coverage where none exists. This, the Court of Appeals expressly recognized in Schiff Assocs. v Flack (supra, 51 NY2d, at 698): "This, however, does not create coverage, for the underlying coverage must be subsisting if the forfeiture is to serve any purpose. So, where the issue is the existence or *852 nonexistence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable (see Gerka v Fidelity & Cas. Co., 251 NY 51, 56; Draper v Oswego County Fire Relief Assn., supra [190 NY 12], at p 17 * * *)”.
Applying the foregoing principle, the Court of Appeals in Schiff (supra) held that the failure to disclaim would not create coverage which the policy was not written to provide. A contrary result would confer additional insurance beyond that which was procured and as to which a premium had been charged and paid (see also, Zappone v Home Ins. Co., 55 NY2d 131; Osohowsky v Romaniello, 201 AD2d 473, 474). Thus, under this principle, waiver will not apply to create coverage where none exists.
However, the same does not hold true with respect to the related doctrine of estoppel or equitable estoppel, which the Court of Appeals distinguished from waiver in Schiff (supra, 51 NY2d, at 699), as follows: "Distinguished from waiver, of course, is the intervention of principles of equitable estoppel, in an appropriate case, such as where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense. In such circumstances, though coverage as such does not exist, the insurer will not be heard to say so (see O'Dowd v American Sur. Co. of N. Y., 3 NY2d 347; Gerka v Fidelity & Cas. Co., 251 NY 51, 57, supra).”
Applying these principles, the Court of Appeals in Schiff (supra) held that, notwithstanding the insurer’s initial disclaimer of liability based upon three particularized policy exclusions, the carrier could nevertheless interpose a defense of noncoverage, "since that defense is never waived by a failure to assert it in a notice of disclaimer. Further, there is no question of estoppel in this case since the insurers at all times denied liability to indemnify and refused to undertake to defend.” (51 NY2d, at 700, supra.) Thus, the precise issue before the Court of Appeals in Schiff was application of the waiver doctrine, not equitable estoppel, which the Court distinguished in terms of its application, effect and legal significance.
In Gerka v Fidelity & Cas. Co. (251 NY 51, 56-57, supra), the Court held, on the facts of that case, that the issue of estoppel should have been submitted to the jury. Accordingly, it re *853 versed the Appellate Division order which had dismissed the complaint and directed a new trial:
"In any event there was a question of fact which should have been submitted to the jury to determine. That is, whether the defendant had estopped itself from relying on the provision of the policy in question by defending the negligence action with knowledge that the boy Pagano was under sixteen years of age at the time of the accident * * *
"The defendant did not at any time offer to turn over the papers in the action to the insured. It continued with the defense of the action, paid the witness fees, conducted the trial, appealed to the Appellate Division, and offered to pay the plaintiff a sum of money to settle the action. Its conduct was inconsistent with its later claim of non-liability under the policy. When it proceeded with the defense of the negligence action, with knowledge of its claimed defense under the policy, it made its election and estopped itself from now urging that defense. [Citations omitted.]”
Similarly, in O’Dowd v American Sur. Co. (3 NY2d 347, 353, supra), the Court of Appeals set forth the operative standard as follows: "It is clear that when an insurer defends an action on behalf of an insured, in his stead, with knowledge of facts constituting a defense to the coverage of the policy, it is thereafter estopped from asserting that the policy does not cover the claim [citations omitted]. However, it is also well established that an insurer may, by timely notice to the insured, reserve its right to claim that the policy does not cover the situation at issue, while defending the action [citations omitted].”
In our case, while it appears that National did defend Ryder under the protective cloak of a reservation of rights during the period subsequent to December 27, 1988, it is undisputed that, prior to that date, there was no such reservation. Plainly, the insurer was aware of the provisions of its own policy, which did not name Ryder as an additional insured, and which only covered vehicles owned, hired or borrowed by NTC. Thus, during the period from September 1985, when the underlying personal injury action was commenced, to December 27, 1988, when a reservation of rights letter was sent, there is an issue whether National should be estopped, an issue which the Court of Appeals in Schiff, O’Dowd, and Gerka (supra) recognized was factual and should be submitted for disposition by the jury as trier of the facts (see also, Ashland *854 Window & Housecleaning Co. v Metropolitan Cas. Ins. Co., 269 App Div 31, 35-36).
Bearing in mind the limited role of the court upon motion for summary judgment as issue finding, not issue determination (Sillman v Twentieth Century-Fox, 3 NY2d 395, 404; Esteve v Abad, 271 App Div 725, 727), whether the facts to be adduced warrant application of equitable estoppel principles here must await the trier of the facts and cannot be resolved summarily. Such a result is consistent with and gives effect to the underlying principle that summary judgment relief is a drastic remedy, which should not be granted where there is any doubt as to the existence of such an issue (Braun v Carey, 280 App Div 1019), or where the issue is arguable (Barrett v Jacobs, 255 NY 520, 522). The underlying rationale is that the granting of summary judgment relief is the functional equivalent of a trial and operates to deprive a party of his day in court. Thus, such relief is to be sparingly granted, especially, as noted, since the key to the procedure is issue finding, not issue determination.
Accordingly, upon the foregoing, the motion by defendants for summary judgment dismissing the complaint in this declaratory judgment action is denied.