SCALI, McCABE, SLOVES, INC., Plaintiff,

v.

The NORTH RIVER INSURANCE COMPANY, Defendant.

No. 80 Civ. 7112 (RWS).

United States District Court, S. D. New York.

June 30, 1981.

**204**

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for plaintiff; Lewis A. Kaplan, Paul A. Weissman, New York City, of counsel.

Morris, Graham, Stephens & McMorrow, Jericho, N. Y., for defendant; Maurice Carrion, Jericho, N. Y., of counsel.

## OPINION

SWEET, District Judge.

This is a diversity action by Scali, McCabe, Sloves, Inc. ("Scali") against The North River Insurance Company ("North River") seeking compensatory and punitive damages under an insurance policy ("the policy") in which the latter agreed to indemnify and defend the former against certain actions for damages in libel. Scali's claim here involves its defense of a libel action brought against it in state court in 1976, *Dictaphone Corporation v. Sloves, et al.*, Index No. 04684/76. After this federal suit was instituted, North River reimbursed Scali for the money it paid in settlement of that action. Scali now moves for partial summary judgment against North River on that portion of this action which seeks recoupment of legal fees and costs incurred by Scali in the defense of the state court libel action. In all but one particular, the motion is granted. The court's findings of fact, based on the affidavits and documents submitted in connection with this motion, and conclusions of law follow.

The insurance policy under which Scali seeks reimbursement from North River was issued to Scali in January, 1976. That policy obligated North River "to defend, subject to the conditions, exclusions and limits provided for ..., any action instituted against the insured, together with the payment of reasonable attorneys' fees incurred in the defense thereof ...." As mentioned above, Scali was sued for libel in New York state court in an action commenced on March 9, 1976. The underlying claim in that state court action is irrelevant here.

The Chairman of Scali, Marvin Sloves ("Sloves"), retained Paul, Weiss, Rifkind, Wharton & Garrison ("Paul, Weiss") to defend Scali in the libel case. Paul J. Newlon ("Newlon"), a member of Paul, Weiss, was initially in charge of handling the case on Scali's behalf. He promptly notified Scali's insurance agent of the suit; that notice was given before Scali answered or otherwise appeared in the case. The agent, in turn, notified North River's corporate parent, Crum & Forster,[1] of the pendency of the suit, and forwarded to it papers relating to the case.

Some two months later, on May 18, the insurance company replied, in a letter in which it reserved its rights under the policy, stated that it had instituted an investigation of the matter, and requested that Paul, Weiss "refrain from pursuing discovery motions" until the resolution of the coverage questions. In the meantime, however, Paul, Weiss, having heard nothing from the insurance company, had already begun to defend Scali in the state court action, albeit without authorization from the insurance company. In response to the May 18 letter, by letter of May 20, 1976, Newlon promised that Paul, Weiss and its client Scali would cooperate with the insurance company's investigation, and informed the company of developments in the state court action during the period of North River's silence. Those developments included certain completed proceedings on discovery motions and the issuance of a court directive that discovery go forward on May 26. Newlon's

---

1. For purposes of this motion, no attempt has been made to distinguish between North River and Crum & Forster. For the sake of simplicity, both will be referred to in this opinion as "the insurance company," "the company," or "the defendant."

letter further stated: "Unless we hear from you to the contrary, we intend to go forward with this discovery according to the agreed schedule." The insurance company did not respond. Discovery proceeded.

In June, a Paul, Weiss associate met with the insurance company's investigator and requested a prompt determination of the coverage question. He advised the investigator that discovery would go forward.

In September, having heard nothing from the insurance company since the May 20 letter mentioned above, Newlon wrote to them once again. He reiterated his request for a speedy resolution of the coverage issue, said that until one was reached "we . . . will continue to take such steps as we deem appropriate in defending the action," and apprised the company of further developments in the case, including continued discovery. A week later, Scali's insurance agent also wrote to the insurance company protesting the latter's unresponsiveness and asserting the necessity of Scali's proceeding with its defense of the state court action despite the company's silence.

In October, the insurance company requested Paul, Weiss to contact its attorney. A Paul, Weiss associate did so. In November, the company's attorney asked for materials relating to the state court action. Those materials were delivered to him that same month, along with a cover letter indicating that discovery would be proceeding "in the very near future." Having heard nothing in response, Paul, Weiss wrote to the attorney in January, once again asking for action and apprising him of the discovery schedule.

In May of 1977, a full year after its first acknowledgment of Paul, Weiss' correspondence regarding the state litigation, the insurance company and its counsel met with Paul, Weiss. They undertook that within two weeks of receipt of transcripts of depositions in the Dictaphone litigation the coverage question would be resolved. The transcripts were delivered on May 24, 1977. It was not until November 10, 1977, however, that the insurance company finally wrote to Scali, acknowledging that the claim, with certain exceptions, was covered by the policy.

The November 10 letter contains the following two paragraphs:

Your attorneys did not move to stay proceedings as we requested on May 18, 1976. It is our opinion that any legal expenses you incurred as a result of your attorneys' actions after they had appeared and answered would not be covered under our policy of insurance. This previously stated Condition of the policy was clearly violated by your actions.

. . . . .

We will pay for all necessary legal expenses which accrue after this date and which would include the costs of answering the summons and complaint on behalf of both defendants, and the estimated cost of a motion to stay proceedings arising from the pending action.

Newlon responded on behalf of Scali on January 31, 1978, in a letter in which he protested the insurance company's disavowal of liability for most pre-November 10 legal fees. Newlon pointed out that the insurance company had never requested Paul, Weiss to move to stay all proceedings, and that the company's indecision regarding coverage would have provided no legal basis for doing so. Newlon further observed that the insurance company had never questioned the steps taken in defense of the suit.

On April 19, the insurance company responded. It expressed interest in the possibility of settlement, and indicated its willingness to pay up to $10,000 if a settlement could be worked out. Paul, Weiss replied that it would renew its theretofore fruitless efforts to arrive at a settlement, and brought the insurance company up to date on the progress of the litigation.

The case was placed on the trial calendar, and remained there for some time as settlement negotiations were pursued. Dictaphone asked $35,000; Scali offered only the $10,000 that the insurance company had expressed its willingness to pay. The negotiations failed in June of 1979. The insur-

ance company, though advised of these events, did not suggest that the $35,000 figure be accepted. In rejecting that offer, Scali relied upon the insurance company's promise of November 10, 1977 to pay for all necessary legal expenses incurred in connection with the litigation.

At this point, Newlon was relieved on the *Dictaphone* litigation by a partner at Paul, Weiss, Lewis Kaplan ("Kaplan"), who assumed primary responsibility for the action. Kaplan successfully moved to amend Scali's answer. He informed the insurance company of that action. He then moved for summary judgment, having informed the company in advance of his intention to do so and having received no objection. The summary judgment motion was unsuccessful. After informing the insurance company of this defeat, Kaplan stated that he planned to appeal, and invited the company's views on the matter. That invitation elicited no response.

In February, 1980, Kaplan wrote to the insurance company that Dictaphone had made a settlement offer of $70,000. He elicited the company's views on the offer. In mid-March, the company rejected the $70,000 proposal. In turning it down, Scali once again relied on the company's assurance that all necessary legal expenses would be covered by its insurance policy.

Finally, on March 17, 1980, the case was called for trial. Before the jury selection commenced, on the judge's recommendation, it was settled for $25,000. Before entering into the settlement agreement, Kaplan attempted to reach the insurance company by phone, but was unable to do so. By letter of March 17, 1980, Kaplan notified the insurance company of the settlement. That letter elicited no offer of payment, however, and so on July 8, 1980 a formal claim was submitted. The claim was for a total of $142,487.49, broken down as follows: $112,290.54 in legal fees and disburse-

ments; $3,530.95 in stenographers' fees; $1,666.00 for the preparation of an expert witness; and $25,000 for the settlement payment to Dictaphone. The insurance company did not respond to the claim, despite subsequent, written prodding by Kaplan. This suit was filed in December, 1980.

On the basis of these facts, Scali contends that it is entitled to summary judgment for legal fees and disbursements. In opposition, the insurance company argues that issues of fact [2] exist and that, therefore, summary judgment is inappropriate. The issues that the insurance company contends remain to be litigated concern the coverage afforded by the policy, the necessity of the tasks performed by Paul, Weiss in the conduct of the *Dictaphone* litigation, and the reasonableness of Paul, Weiss' fees, for the policy held by Scali provides only for the payment of "reasonable" fees. Although it is not altogether clear, the insurance company does not appear to take issue with the hourly rate charged, but rather with the time expended and tasks performed.

Scali contends that North River is estopped from contesting the reasonableness of the attorneys' fees. Scali's argument has two parts. First, as to legal expenses incurred after November 10, 1977, Scali contends that North River is estopped by its letter of that date, in which it declared: "We will pay for all necessary legal expenses which accrue after this date ..." Second, as to pre-November 10, 1977 legal expenses, Scali contends that because North River did not initially protest their reasonableness when it disclaimed liability on a different ground, it cannot do so now. I have concluded that Scali is entitled to recover all but $1,000 of its claim for legal fees and expenses, but for reasons slightly different from those advanced by Scali here.

---

**2.** By affidavit, the insurance company attempts to raise an issue of fact in addition to those discussed below, namely, whether it was informed of the various settlement possibilities as they arose. However, the documentary evidence, that is, the letters dated June 12, 1979, and February 14, 1980 from Paul, Weiss counsel to the insurance company, clearly establish that the insurance company was informed of at least two of the settlement offers made. Based on these documents, I conclude that there is no genuine issue of fact on this point.

As to the first issue, whether the policy covers the conduct of the *Dictaphone* litigation, it is only in its Rule 3(g) statement that the defendant suggests that an issue of fact may exist. In the first paragraph of that statement, the insurance company declines either to admit or deny coverage. However, in at least three other documents, the insurance company has admitted coverage. First, in its letter of November 10, 1977, quoted in part above, the insurance company stated that it "would provide coverage," subject to certain limitations, conditions and exclusions. Second, in its answer to Scali's complaint in this case, the defendant admitted coverage, although that admission was also replete with reservations. Finally, in the affidavit of a claims supervisor in the employ of the defendant that was submitted in opposition to this very motion, the supervisor states that the "[d]efendant has admitted . . . that it had the obligation, under the policy of insurance issued to the plaintiff, to pay the . . . attorneys' fees incurred in the defense of the DICTAPHONE action . . . on the theory of reasonable value of such services." Based on these three documents, I find that the insurance company has admitted that the policy afforded coverage to the conduct of the *Dictaphone* litigation and cannot now raise the coverage question as an issue of fact to bar the granting of summary judgment. *See Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co.,* 147 F.2d 399, 403–05 (2d Cir.), *cert. denied,* 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982 (1945); *General Construction Co. v. Hering Realty Co.,* 201 F.Supp. 487, 492–93 (E.D.S.C.1962), *app. dism'd,* 312 F.2d 538 (4th Cir. 1963).

Indeed, even disregarding the admissions contained in the aforementioned answer and affidavit, I would find that the insurance company is estopped by the November 10 letter alone from contesting the fact of coverage. Scali relied on that letter and the assurance of coverage it contained in rejecting the settlement offers subsequently made. The insurance company's commitment, coupled with Scali's detrimental reliance thereon, estops the company from disclaiming coverage under the policy for Scali's legal expenses. *See Posner v. United States Fidelity & Guaranty Company,* 226 N.Y.S.2d 1011, 1017, 33 Misc.2d 653 (Sup.Ct. Sullivan Cnty.), *aff'd,* 229 N.Y.S.2d 160, 16 A.D.2d 1013 (3d Dep't. 1962) ("An estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury"). *See generally Val Drugs, Inc. v. Lynn,* 402 F.Supp. 174, 177 (W.D.N.Y.1975) ("It is well settled that the acts of an insurer which led the insured to believe he is covered under the policy estop the insurer from denying coverage . . .").[3]

**3.** The insurance company has raised an additional issue regarding the pre-November 10 legal expenses. Its original refusal to pay for most of those expenses was based on an alleged failure to comply with a "policy condition"—that Scali move to stay discovery proceedings in the district court. This ground was also raised in the defendant's answer to this action. However, this alleged breach of a "policy condition" is pleaded only generally and not with particularity, and is therefore improperly pleaded. *See* Fed.R.Civ.P. 9(c). Yet because that pleading error could presumably be corrected in time, some consideration of the merits of this defense is appropriate here.

The alleged breach of a "policy condition," insofar as is ascertainable from the record before me, relates to the request made by the insurance company in its letter of May 18, 1976, that Paul, Weiss "refrain from pursuing discovery motions until the coverage questions are resolved." North River characterizes this as a request that Paul, Weiss move to stay all proceedings in the state court action, and maintains that Paul, Weiss' failure to do so and continued, active conduct of the litigation after this request was made constituted a breach of a policy condition.

I find that North River is estopped from raising this defense now because of subsequent events. Specifically, I refer to Paul, Weiss' letter of May 20, 1976, in which Paul, Weiss informed the insurance company of events in the case and of its intention to follow the court-ordered discovery schedule unless the insurance company voiced some objection. The company did not voice any objection; discovery proceeded. In these circumstances, because Scali was prejudiced by the insurance company's silence, North River is now estopped from disclaiming liability. *See State Farm Mutual Automobile Ins. Co. v. Elgot,* 369 N.Y.S.2d 719, 721, 48 A.D.2d 362 (1st Dep't. 1975) (when the insured has been prejudiced as a result of insurer's failure to disclaim liability, doctrine of estoppel

As to the second issue, the necessity of the tasks performed and the reasonableness of the fees charged by Paul, Weiss, with one small exception I find that the defendant has failed to make a showing sufficient to raise a factual issue that would block the granting of summary judgment. "[W]hen a motion for summary judgment is made and supported ... the opposing party may not rest upon mere conclusory allegations or denials." *Markowitz v. Republic National Bank of New York*, 651 F.2d 825, (2d Cir. 1981). *See SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). The defendant here has sought to do precisely that. The insurance company has not opposed Scali's summary judgment motion with affidavits, based on first-hand knowledge, setting forth as a matter of fact that the fees charged were unreasonable or the tasks performed unnecessary to the defense of the state court action. Indeed, it has adduced no facts on the basis of which such an inference could be made. Nor has it suggested any reason for its failure to do so.[4] Fed.R.Civ.P. 56(f). Instead, it has sought to withstand Scali's summary judgment motion through conclusory allegations of unreasonableness and through a recitation of Paul, Weiss' invoices followed by a string of rhetorical questions such as: "Is such charge for these services reasonable?" "Can this amount, in all seriousness, be considered reasonable?" "Can the amount of such services be considered reasonable?" Conclusory allegations and rhetoric do not raise an issue of fact regarding the necessity or reasonableness of the *Dictaphone* legal expenses sufficient to defeat Scali's summary judgment motion.

However, on one detail the insurance company has raised such a factual issue. In its invoice dated August 3, 1979, Paul, Weiss billed for preparation for and attendance at a pre-trial conference in connection with the state court action. In opposition to this motion, the insurance company submitted an affidavit from a law clerk in the company's attorneys' office stating that he checked the records of the state court action and found no entry reflecting that such a conference was held. There is therefore an issue of fact regarding the propriety of this one invoice for $1,000, and Scali's recovery on this motion will therefore be reduced by that amount.

With the exception of that $1,000 item, Scali is entitled the partial summary judgment it seeks.

Submit judgment on notice within ten (10) days.

IT IS SO ORDERED.

---

is applied); *Allstate Ins. Co. v. Flaumenbaum*, 308 N.Y.S.2d 447, 454, 62 Misc.2d 32 (Sup.Ct. N.Y.Cnty.1970) ("if the insurer, with full knowledge of the facts, acts in a manner inconsistent with a disclaimer of liability, it will be precluded from so disclaiming.").

4. Presumably, the defendant could have opposed this motion with affidavits from attorneys who reviewed the record of the *Dictaphone* litigation and concluded that unnecessary tasks were performed or that the fees charged were otherwise unreasonable. No such affidavits were submitted.