■ MRI BROADWAY RENTAL, INC., Respondent, v UNITED STATES MINERAL PRODUCTS COMPANY et al., Appellants. [662 NYS2d 114] —Order, Supreme Court, New York County (Stanley Sklar, J.), entered on or about April 1, 1996, which, to the extent appealed from, denied defendant Giamboi Brothers, Inc.'s motion, pursuant to CPLR 3212 and 3211 (a) (5) and (7), to dismiss the first, second, third, fourth and sixth causes of action, unanimously reversed, on the law, without costs or disbursements, and the motion granted.

In 1970, prior to the 1971 completion of the building known as 1633 Broadway, the New York City Department of Air Resources had successfully enjoined the spraying of asbestos insulation at three Manhattan buildings, one of which was 888 7th Avenue, managed by the same agent, Paramount Group, Inc. (PGI), as managed 1633 Broadway, based upon the then known hazardous nature of airborne asbestos. In 1973, the United States Environmental Protection Agency and the Mount Sinai School of Medicine commenced a nationwide study of buildings containing asbestos, including 888 7th Avenue, and published its report in 1975. From 1975 to 1985, the general awareness of the dangers of friable asbestos in large buildings increased. In 1985, Local Law No. 76 was enacted in New York City, effective December 2, 1986, establishing procedures for the abatement of asbestos where the renovation or demolition of premises would cause a disturbance with respect to the asbestos. In anticipation of the new law, PGI retained environmental consultants, who conducted air monitoring in both 888 7th Avenue and 1633 Broadway, to develop an asbestos management plan. In or about May 1987, PGI adopted a policy of removing Asbestos Containing Material (ACM), whenever construction or renovation had the potential to disturb it. It is undisputed that, in late 1986 and for the first six months of 1987, plaintiff, the owner of 1633 Broadway since 1976,

undertook substantial asbestos abatement work on the 16th, 19th, 23rd, 26th, 33rd, 34th and 38th floors of 1633 Broadway and that, as of June 30, 1987, approximately $600,000 of asbestos abatement work had been performed by various contractors specializing in that work. Plaintiff argues, with support from affidavits from various PGI officers, that all the abatement work was performed for economic purposes, that is, either in response to the concerns of potential or current tenants aware of the dangers of asbestos or to remain competitive in the marketplace in attracting commercial tenants. Plaintiff argues that neither the fact that it knew that asbestos was used in the building nor that it conducted asbestos abatement work is indicative that the asbestos in the building constituted a health hazard, i.e., that the building was contaminated. The record shows otherwise. For example, a letter from Kaselan & D'Angelo (K&D), one of the asbestos consultants hired by PGI, to one of its asbestos abatement contractors stated that K&D had performed asbestos analysis on building material samples, which were found to contain asbestos, from the 26th floor of 1633 Broadway. It is also uncontested that a PGI officer on April 14, 1987 (19th and 26th floors) and May 11, 1987 (16th floor), respectively, executed the official asbestos removal notification under certification to the New York City Department of Environmental Protection (DEP) relating to the removal of the non-asbestos ceiling tiles and asbestos. The certifications are required by regulation whenever friable asbestos is being removed. In addition, as the IAS Court noted, on June 3, 1987, a complaint was filed, anonymously, with DEP alleging that asbestos was flying around the 26th floor. A responding City inspector found that non-asbestos ceiling tiles had been removed from the 26th floor and labeled as ACM waste. The contract cost of the abatement of asbestos on the 26th floor alone was approximately $400,000. The two 1987 abatement projects are at issue for Statute of Limitations reasons because plaintiff claims it was unaware that undisturbed asbestos could cause a problem in the building until 1988 when K&D so apprized it. If this were the accrual date, the action would be timely. It is conceded that plaintiff's tort claims are time-barred if they accrued before August 28, 1987.

By summons and complaint dated August 27, 1990, plaintiff sued defendants, the applier (Giamboi Brothers, Inc.) and manufacturers (United States Mineral Products Company and Isolatek Corporation) of the asbestos-containing fireproofing in the building, alleging that such fireproofing is dangerous, unsafe and hazardous. Its complaint is apparently intentionally left vague in that there is no allegation that the 1633

Broadway building was contaminated or rendered hazardous at any specific time. Rather, plaintiff alleges that "[t]here are asbestos-containing materials in use in the * * * [b]uilding" since construction was completed in 1971 and that "[d]uring this period, and continuing to the present and into the future asbestos fibers have damaged and continuously and repeatedly will cause physical damage to the [s]ubject [b]uilding." In that regard, plaintiff alleged that it has sustained injury because it had to remove or contain the fireproofing to prevent further damage to the structure and its components and occupants. Defendants have appealed from the denial of their summary judgment motion to the extent that it denied dismissal of the first (negligence), second (restitution), third (indemnification), fourth (strict product liability) and sixth (prima facie tort) causes of action. In denying the motion to the extent it did, the IAS Court held that the mere presence of asbestos or the general knowledge that such material can be harmful is insufficient to trigger the running of the Statute of Limitations. We reverse.

To establish the date of plaintiff's claimed injury for Statute of Limitations purposes, a court must "take the complaint as we find it." (*Nasaba Corp. v Harfred Realty Corp.*, 287 NY 290, 296.) This complaint is a mirror image of the complaint in *888 7th Ave. Assocs. Ltd. Partnership v AAER Sprayed Insulations* (199 AD2d 50, *lv denied and dismissed* 84 NY2d 841), in which this Court affirmed the dismissal of the complaint on Statute of Limitations grounds. The same law firm filed both complaints, which contain identical allegations of injury and damage. The same management agency (PGI) and asbestos consultants are involved. In responding to these allegations in *888*, the IAS Court noted that, under the theory of the complaint, the owner's predecessor in interest was injured by normal wear and tear at least as early as 1985, and held that the claims were time-barred under either CPLR 214 or 214-c. In affirming, this Court expressed its agreement with that analysis (*supra*, at 51). Faced with this precedent, plaintiff, with new counsel, wove a new theory of its case, presented, for the first time and without amendment of the complaint, in opposition to defendant Giamboi's summary judgment motion. According to plaintiff, the linchpin of its tort claims and, particularly, their accrual, became "contamination". While insisting that defendants failed to prove contamination, plaintiff submitted expert opinions that the date of contamination, if, indeed, it ever occurred, was unknown and unascertainable, clearly an unacceptable premise from a jurisprudential point of view since, under that premise, the statute would never begin to run.

Furthermore, accepting plaintiff's argument, its acts of retaining environmental consultants, making tenant concessions to deliver asbestos-free space and undertaking costly abatements, all of which occurred prior to the August 28, 1987 cut-off, would have had plaintiff being damaged before it was injured. It is well recognized that a "shadowy semblance of an issue is not enough to defeat [summary judgment]"; nor is a court required to shut its eyes to the patent falsity of a defense. (*Hanrog Distrib. Corp. v Hanioti*, 10 Misc 2d 659, 660.) Defendants should not be burdened with the obligation to prove the accrual date under plaintiff's theory of contamination, particularly where, as here, as plaintiff must concede under its proofs, contamination has not yet occurred and the date of contamination cannot be ascertained.

New York courts have defined injury in a property damage context and have determined when such injury accrues in a tort-based asbestos property damage case, namely, at the latest, when the plaintiff discovered that asbestos was in the building and suffered the damage of which it complains. In *Sturges Mfg. Co. v Utica Mut. Ins. Co.* (37 NY2d 69, 72-73), the Court, in defining the measuring of "injury to property" in an insurance coverage dispute, held that the incorporation of a defective product into another product inflicts property damage if the defective product is sufficiently integrated into the other property and if, as a result, the value of the other property is reduced beyond the cost of replacing the defective product. Another court defined injury as an actionable act whereby the estate of another is lessened. (*Port Auth. v Allied Corp.*, 914 F Supp 960, 963.) In *Maryland Cas. Co. v Grace & Co.* (23 F3d 617 [2d Cir], *cert denied* 513 US 1052) the court, applying New York law to a dispute over insurance coverage of asbestos property damage claims, recognized that it is damage to the building itself, rather than its consequences, that determines injury. Following *Sturges* (37 NY2d, *supra*, at 72-73), the court concluded that "actual injury to property—the presence of the asbestos hazard—occurs upon installation and exists regardless of whether it yet has been discovered by the building owners." (*Maryland Cas. Co. v Grace & Co.*, *supra*, 23 F3d, at 627.) Thus, contamination, just as with any other consequence of the injurious act, does not define or establish the date of injury. As the *Grace* court stated, "[o]nce installed, the damage that asbestos inflicts is complete. * * * No further property damage occurs because the need to remove or encapsulate the asbestos, which occurred upon the product's installation, remains unchanged." (*Supra*, at 628.) Indeed, this Court in *888 7th Ave. Assocs. Ltd. Partnership v AAER Sprayed Insulations* (199

AD2d, *supra*, at 51) recognized that an owner's tort-based causes of action for asbestos property damage and economic loss caused by exposure to asbestos accrued when the asbestos actually began to cause harm, which event, arguably, occurred "almost immediately after the asbestos was installed." The Fourth Department, in *First Bible Baptist Church v Gates-Chili Cent. School Dist.* (172 AD2d 1057), adopted the accrual date of asbestos injury made explicit in *Grace* and implicit in *888*, extending the concept to "discovery". "[T]he cause of action accrued * * * when plaintiff discovered the presence of asbestos in the building." (*Supra,* at 1057.) Here, it could well be argued that plaintiff's causes of action for the allegedly tortious damage to the building accrued upon installation of the asbestos fireproofing, when its interests therein were injured. Certainly, its injury occurred no later than April 1, 1987, by which time plaintiff not only discovered the presence of asbestos in the building but also hired consultants to deal with the problem, was informed by its consultants that the fireproofing contained asbestos, approved removal specification for a tenant, removed asbestos fireproofing from the building and demolished and disposed of non-asbestos ceiling tiles because of contamination, insured itself against loss resulting from that removal work and sustained rental income loss during the period of abatements. All of these injuries and damages are complained of in the complaint. It is clear that by April 1987 plaintiff had already discovered the injury on which its claim is based, the presence of asbestos, as well as the need to abate it. In fact, by no later than April 1987, plaintiff had discarded ceiling tiles as "ACM Waste" because of its contamination. Thus, its tort claims are barred in any event.

Finally, plaintiff's restitution and indemnity claims should have been dismissed. The IAS Court recognized that it would have dismissed these claims had it dismissed the tort causes of action. It is settled law that an equitable remedy is not available to enforce a legal right that is itself barred by the Statute of Limitations. (*Galway v Metropolitan El. Ry. Co.*, 128 NY 132.) "[T]he equitable remedy depends, among other things, upon the existence of a legal cause of action, [and] it follows that those facts which will bar the legal action will also afford an answer to the equitable remedy." (*Supra,* at 146.) Restitution and indemnification are equitable remedies subject to the same rule. (*See generally, State of New York v Stewart's Ice Cream Co.*, 64 NY2d 83, 88.) In *888*, this Court affirmed the dismissal of the building owner's restitution and indemnity claims and as this Court, in *City of New York v Lead Indus. Assn.* (222 AD2d 119, 127), in discussing *888's* equitable claims,

noted, "It was, therefore, quite apparent * * * that plaintiff was, in essence, seeking to circumvent the Statute of Limitations bar on its tort claims by merely recasting them in indemnity and restitution terminology and our affirmance was a rejection of what we viewed as an attempt to inappropriately utilize such nomenclature." The allegations in the instant complaint, including those in support of the restitution and indemnity claims, are identical to those in the *888* complaint.

This complaint should be dismissed. Concur—Sullivan, J. P., Milonas, Williams and Tom, JJ.