**ISLAND LATHING & PLASTERING, INC., Plaintiff,**

v.

**The TRAVELERS INDEMNITY COMPANY, Travelers Casualty and Surety Company f/k/a Aetna Casualty and Surety Company, and their subsidiaries and affiliates, Defendants.**

**No. 00 Civ. 3500(RMB).**

United States District Court, S.D. New York.

Aug. 24, 2001.

Hugh Helfenstein, David L. Kromen, Oshman, Helfenstein, Bernstein, Mirisola & Schwartz, LLP, New York City, for plaintiff.

Jonathan Rosenberg, Paul R. Neihaus, O'Sullivan, LLP, New York City, for defendants.

## *ORDER*

BERMAN, District Judge.

Plaintiff, Island Lathing & Plastering Inc. ("Plaintiff" or "Island"), filed this action on or about March 23, 2000, to recover the balance of unpaid litigation defense costs from defendants, The Travelers Indemnity Company, Travelers Casualty and Surety Company f/k/a Aetna Casualty and Surety Company, and their subsidiaries and affiliates (collectively "Defendants"). On or about October 2, 2000, Defendants filed a motion to dismiss the complaint, pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 12(b)(6), asserting that the insurance policies ("Policies") issued to Plaintiff by Defendants from August 6, 1990 to August 1, 1998, as a matter of law, provide no coverage. On or about October 30, 2000, Plaintiff opposed Defendants' motion. **For the reasons set forth below, Defendants' motion to dismiss is granted.**

### I. Background

### The Underlying Litigation(s)

On or about January 25, 1995, Stanley Stahl ("Stahl") commenced a lawsuit (the "underlying suit") against Chase Manhattan Bank ("Chase"), formerly Chemical Bank. (*See* Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def.Mem.") at 3). Stahl is the owner and landlord of 277 Park Avenue in New York City (the "Building"). (Affidavit of Jonathan Rosenberg dated October 2, 2000 ("Rosenberg Aff.") Ex. B ¶ 1). The underlying suit arose out of, among other things, an alleged "breach of contract based on the bank's failure to perform tenant exit work and its installation of the allegedly

illegal fireproofing, and for common law indemnification of the costs for removing such fireproofing." *Chemical Bank v. Stahl*, 272 A.D.2d 1, 4, 712 N.Y.S.2d 452 (1st Dep't 2000).

Stahl alleged that in or about 1981, Chase undertook an asbestos abatement project (the "Project") in the space leased by Chase (the "Premises") in the Building. (Rosenberg Aff.Ex. E ¶ 11). Chase had hired William L. Crow Construction Company ("Crow") in 1981 as the general contractor for the Project. (*Id.* at ¶ 17). Subsequently, Crow subcontracted with Plaintiff to perform "certain fireproofing services including the removal of all existing asbestos fireproofing at the Premises in various locations in the Building." (*Id.* at ¶ 25). Stahl further alleged that Chase did not completely remove the original asbestos fireproofing in preparation for a second application of fireproofing. (*Id.*). Instead, "Chase resprayed a new fireproofing product over existing asbestos fireproofing" creating a " 'hybrid' fireproofing assembly." (*Id.* at ¶¶ 11–12). Stahl argued that "the very installation of this hybrid fireproofing was defectively done, was illegal and, as such, also constituted a breach of the lease." *Chemical*, 272 A.D.2d at 8, 712 N.Y.S.2d 452. Furthermore, it was alleged that the hybrid fireproofing assembly constituted a "hazardous hybrid condition" and a "public nuisance." (Rosenberg Aff.Ex. E ¶¶ 13–14).

In or about September 1996, Chase commenced a third-party action (as part of the underlying suit) against Crow for (common law) indemnification. (*Id.* at ¶¶ 8, 20, 18). In or about August 1997, Crow impleaded Plaintiff (the "Crow Construction fourth party lawsuit"). (Complaint ¶ 5). Crow's fourth-party lawsuit complaint against Island alleges, among other things, that Plaintiff is responsible "for substantial money damages claimed [by Chase] as a result of [Plaintiff's] negligence and contractual common law indemnity arising from its removal of asbestos containing fire proofing materials and its re-spraying of new materials on portions" of the Building. (*Id.*)[1]

**Plaintiff's Complaint Against Defendants**

On or about March 23, 2000, Plaintiff commenced the instant action against Defendants to recover the fees and expenses incurred by Plaintiff in the defense of the Crow Construction fourth party lawsuit.[2] (Complaint ¶ 8). Plaintiff alleges that based upon the Policies, Defendants must provide defense coverage (costs) for the Crow Construction fourth party lawsuit. (*Id.* at ¶ 4). Plaintiff also contends that the Policies provide coverage for Stahl's "loss of use" of the Building in 1994 as a result of Chase's failure to surrender the Premises in good condition. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.Opp.") at

---

**1.** A stipulation of discontinuance in the underlying suit was entered into by all parties on or about February 13, 2001.

**2.** Prior to Plaintiff's filing the instant case, Defendants voluntarily paid approximately 42.5% of Plaintiff's defense costs in the Crow Construction fourth party lawsuit. (Complaint ¶ 7). In Defendants' March 5, 1999 and March 7, 1999 letters to Plaintiff, Defendants indicated a "willing[ness] to contribute to 42.5% of the reasonable and necessary costs incurred in Island's defense" due to its

"potentially applicable policies." (Rosenberg Aff.Ex. V at 2). In these same letters, Defendants make clear that their "willingness to participate in Island's defense of this lawsuit should not be construed as an admittance or belief that Travelers has any indemnity obligations to Island in this matter. [Moreover,] without limitation of the foregoing, Travelers reserves the right to assert that the coverage defenses articulated in [their] November 12, 1998 letter apply to the defense of this matter." (*Id.*).

3). Further, it is Plaintiff's position that Defendants, in the letter dated March 5, 1999, and in other correspondence dated November 12, 1998 and March 12, 1999, acknowledged an obligation to provide defense coverage in the Crow Construction fourth party lawsuit. (Complaint ¶ 6).

### The Policies

On August 6, 1990, Defendants issued the first of eight "Commercial General Liability, Coverage Form—Contractors" policies (the "CGL Policies") and "Commercial Excess (Umbrella) Insurance" policies (the "Excess Policies") (the CGL Policies and the Excess Policies together are referred to as the "Policies") to Plaintiff. (Rosenberg Aff.Exs. F–U). The Policies provided primary and excess liability insurance coverage from August 6, 1990 to August 1, 1998. (*Id.*). The CGL Policies state that Defendants have a duty to defend any "suit" for " 'bodily injury' or 'property damage' which occurs during the policy period. The 'bodily injury' or 'property damage' must be caused by an 'occurrence' ... [which] must take place in the 'coverage territory.' " (*Id.*). The Policies define the term "property damage" as "physical injury to tangible property, including all resulting loss of use of that property; or loss of use of tangible property that is not physically injured." (*Id.*). The Policies further state that the coverage is available only if the "property damage" is "deemed to occur at the time of the 'occurrence' that caused it." (*Id.*). An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general conditions." (*Id.*). The Policies expressly exclude coverage for property damage arising out of "a defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work;' or a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." (*Id.*).

## II. Standard of Review

In resolving a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). A complaint should not be dismissed for failure to state a claim unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Yonkers Contracting Co. v. General Star Nat. Ins. Co.,* 14 F.Supp.2d 365, 370 (S.D.N.Y.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In other words, the burden upon the movant is substantial as the issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Yonkers,* 14 F.Supp.2d at 370 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir. 1995). However, while "the well-pleaded material allegations of the complaint are taken as admitted ... conclusions of law or unwarranted deductions of fact are not admitted." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir. 1994), *cert. denied,* 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995) (citations omitted).

In assessing the complaint's sufficiency on a Rule 12(b)(6) motion, "the court is to look only to the allegations of the complaint and any documents attached to or incorporated by references in the

complaint." *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir.1999) (citations omitted); *see also Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 140 n. 1 (2d Cir.1999) (trial court "explicitly and correctly considered the group policy on the theory that it had been incorporated by reference in the complaint"); *Bridgeway Corp. v. Citibank*, 132 F.Supp.2d 297, 303 (S.D.N.Y.2001) ("a court generally may not consider documents that the plaintiff has neither attached to nor incorporated by reference in the complaint in deciding a Rule 12(b)(6) motion"). An exception to this aspect of Rule 12(b) has developed. When a party seeks to introduce affidavits, depositions, or other extraneous documents not set forth in the complaint for a court to consider on a Rule 12(b)(6) motion, the court may do so if there was "undisputed notice" of their contents and they were "integral to the plaintiff's claim." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991).

## III. Analysis

### Insurance Coverage Trigger

■ Defendants contend that the coverage claims must be dismissed because Plaintiff cannot, as a matter of law, show that an "occurrence" took place (triggering insurance coverage) after issuance of the Policies in 1990. (Def.Mem. at 12–14). Defendants' position is that the occurrence took place in 1982; that the underlying claims relate to "property damage" arising out of Plaintiff's creation of a "hybrid fireproofing assembly" by re-spraying existing fireproofing at the Building in 1982, i.e. some eight years before the Policies were issued. (*Id.*). Plaintiff, on the other hand, contends that Defendants must pay for the defense of the Crow Construction fourth party lawsuit because the "occurrence" was Stahl's "loss of use" in 1994.[3] (Pl.Opp. at 12–15). Plaintiff's theory is that the "hybrid fireproofing assembly" in 1982 created a continuous exposure to substantially the same generally harmful conditions that resulted in property damage (i.e. Stahl's "loss of use") in 1994, which was within the policy period. (*Id.*).[4]

■ The question here is whether the Policies are triggered when the actual damage occurs or when the damage is discovered. The approach to determine when a policy is triggered under controlling New York law is a " 'damage-in-fact' trigger, meaning that the coverage will be invoked if it is shown that the damage to the property actually occurred during the

---

**3.** "The duty to defend arises whenever the underlying allegations 'arguably or potentially bring the action within the protection purchased.' " *Employers Ins. of Wausau v. The Duplan Corp.*, 1999 WL 777976, at *30 (S.D.N.Y. Sept.30, 1999) (quoting *Avondale Ins. Indus., v. The Travelers Indem. Co.*, 887 F.2d 1200, 1204 (2d Cir.1989)), *reh'g denied*, 894 F.2d 498 (1990). "Under this principle, '[w]here the underlying complaint does not preclude the possibility that the injury-in-fact occurred during the subject policy period, the policy is triggered.' " *Id.* (quoting *American Empire Ins. Co. v. PSM Insur. Cos.*, 259 A.D.2d 341, 687 N.Y.S.2d 32, 33 (1st Dep't 1999)).

**4.** As noted, the Policies cover "property damage" caused by an "occurrence" which takes place during the policy period. (Rosenberg Aff.Exs. F–M). "Property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property; or loss of use of tangible property that is not physically injured," which must be caused by an "occurrence" during the policy period. "Occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same general or harmful conditions." Further, "property damage that is the loss of use of tangible property that is not physically injured shall be deemed to occur at the time of the 'occurrence' which caused it." (Rosenberg Aff.Exs. F–M).

period for which the insurer was on the risk." *Employers Ins. of Wausau,* 1999 WL 777976, at *26; *see also Maryland Casualty v. W.R. Grace,* 23 F.3d 617, 624 (2d Cir.1993).[5] In asbestos exposure cases, the "damage-in-fact occurs upon installation in buildings of products containing asbestos." *Maryland Casualty,* 23 F.3d at 627. "The actual injury to the property—the presence of the asbestos hazard—occurs upon installation and exists regardless of whether it yet has been discovered by the building owner." *Id.* **In other words, it is the "damage to the building itself, rather than its consequences that determines injury."** *MRI Broadway Rental, Inc. v. United States Mineral Products Co.,* 242 A.D.2d 440, 443, 662 N.Y.S.2d 114 (1st Dep't 1997) (emphasis added). "Once installed, the damage that asbestos inflicts is complete." *Maryland Casualty,* 23 F.3d at 628; *see also MRI Broadway Rental,* 242 A.D.2d 440, 662 N.Y.S.2d 114. The U.S. Court of Appeals for the Second Circuit does not trigger coverage where "no further property damage occurs because the need to remove or encapsulate the asbestos which occurred upon the product's installation, remains unchanged." *Maryland Casualty,* 23 F.3d at 628.[6]

■ Plaintiff's allegations are not sufficient to trigger Defendants' defense coverage under the Policies. That is, Plaintiff is alleged to have re-sprayed the asbestos fireproofing while doing subcontract work from 1981 to 1982. (Rosenberg Aff.Ex. B ¶ 14; Ex. C ¶¶ 27, 28; Ex. E ¶¶ 10, 16–17, 25–36). The re-spraying harmed the Premises by creating a "hybrid fireproofing assembly"—part asbestos, part new fireproofing product. (*Id.* Ex. B ¶ 15). In *Maryland Casualty* the Court stated that "installation of the asbestos is an occurrence of damage-in-fact and triggers the insurance coverage in effect at that time." 23 F.3d at 627. Thus, it follows here that the "property damage" took place in 1981 or 1982 when Plaintiff re-sprayed (rather than removed) the asbestos. Defendants have no duty to defend because Plaintiff's allegations do not bring the case within the coverage of the Policies which began in August of 1990.

■ Plaintiff argues that the Court should set the Policies' trigger date(s) at the time Stahl discovered the hybrid fireproofing assembly in 1994. (Pl.Opp. at 14). Plaintiff reasons that "there was no cause of action and no damages sustained, let alone a 'loss of use' of the demised premises, until Chemical vacated the de-

---

5. In the case at bar, the Court's view is that property damage must have "occurred" after August 6, 1990 for Plaintiff to succeed.

6. In *Maryland Casualty, W.R. Grace & Co.–Conn* ("Grace") manufactured and sold asbestos building products. 23 F.3d at 620. These products were used for fireproofing buildings from the 1940's until 1973 when the U.S. Environmental Protection Agency ("EPA") prohibited further asbestos sales because the inhalation of asbestos was found to cause serious health problems. *Id.* On or about May 31, 1989, Grace defended multiple litigations by building owners claiming property damage caused by the presence of asbestos in their buildings. *Id.* Maryland Casualty Company ("Maryland") had sold comprehensive general liability insurance to Grace from 1955 to 1973, and, in 1983, Maryland brought a declaratory judgment claim against Grace seeking to determine what obligation, if any, Maryland owed to defend or indemnify Grace in the underlying asbestos lawsuits. *Id.* The magistrate judge entered summary judgment in favor of Grace, concluding that coverage is triggered when the building owner **discovers** hazardous asbestos. *Id.* The U.S. Court of Appeals for the Second Circuit reversed and concluded that the coverage is triggered "at the time asbestos products are **installed,** and injury to property does not continue after that event. Insurers on the risk at the time of installation are obligated under their policies with Grace." *Id.* at 628 (emphasis added).

mised premises in 1994." (*Id.*). Plaintiff asserts that Stahl's "loss of use" in 1994, as a result of Chase's failure to surrender the Premises in good condition, constitutes "property damage" under the Policies. (*Id.* at 14–15). The Court believes Plaintiff misconstrues the definition of "occurrence." *See Maryland Casualty*, 23 F.3d at 628. Plaintiff relies upon the phrase "continuous or repeated exposure to substantially the same general harmful conditions," reasoning that the hybrid fireproofing was continuous and resulted in Stahl's loss of use during the coverage period. (Pl.Opp. at 14).

■ Even if one were to agree that Stahl's "loss of use" of the property is the "property damage" for which Plaintiff has been held responsible,[7] the Policies still cannot, upon the instant motion, be construed to afford defense coverage. Plaintiff claims that the "occurrence" or "hybrid fireproofing" which took place in 1982 was "continuous" and resulted in Stahl's "loss of use" during the effective dates of the Policies. (Pl.Opp. at 14–15). However, Plaintiff's allegations, presumed to be true for purposes of the instant motion to dismiss, fail to constitute a prima facie case against Defendants for breach of insurance coverage. *See Jones v. Trump*, 1997 WL 277375, at *5 (S.D.N.Y. May 27, 1997). The "occurrence" in asbestos related litigation is not "continuous." *Maryland Casu-*

alty, 23 F.3d at 628. "Once installed, the damage that asbestos inflicts is complete.... No further property damage occurs because the need to remove or encapsulate the asbestos, which occurred upon the product's installation, remains unchanged." *Id.; see also Stonewall Ins. Co. v. Asbestos Claims Mgmt.*, 73 F.3d 1178, 1210 (2d Cir.1995) (The damage flowing from the hybrid fireproofing "i.e., the costs of removing or encapsulating the in-place asbestos[,] ... does not arise incrementally, cumulatively, or continuously, and is in no sense an injurious process during the course of which the property damage somehow ... progresses from an incipient to a fully developed state"). Nor has Plaintiff alleged there was a progressive injury "such as the gradual contamination of earth and groundwater by leaking landfills," *Maryland Casualty*, 23 F.3d at 627, which may trigger coverage "at more than one point in time." *Stonewall*, 73 F.3d at 1195. The existence of the hybrid fireproofing on the steel members of the Building as a result of Plaintiff's re-spraying in 1981 and/or 1982, was the same general harmful condition which was discovered by Stahl in 1994, upon Chase's surrender of the Premises. (Rosenberg Aff.Ex. E ¶¶ 10–14). The "occurrence" took place in 1981 or 1982, eight years before the issuance of the Policies.

■ Plaintiff argues that this case is **not** analogous to "asbestos property dam-

---

7. The language of insurance policies "should be given the construction most favorable to the insured." *McGroarty v. Great Am. Ins. Co.*, 36 N.Y.2d 358, 368 N.Y.S.2d 485, 489–90, 329 N.E.2d 172 (1975). However, the Complaint clearly alleges that Plaintiff's involvement in the underlying suit pertains to "its removal of asbestos containing fire proofing material and its re-spraying of new material on portions of the building interior" which occurred in 1982. (Complaint ¶ 5). "Coverage is triggered upon the existence of property damage independent of its discovery." *Maryland Casualty*, 23 F.3d at 626.

"In other words, the decrease in market value merely reflects the recognition that something bad has happened to the building [, and that] 'something bad' is the incorporation of the defective product.' " *Maryland Casualty*, 23 F.3d at 628 (quoting John P. Arness and Randall D. Eliason, *Insurance Coverage for "Property Damage" in Asbestos and Other Toxic Tort Cases*, 72 Va.L.Rev. 943, 955–56 (1986)). "Thus, the loss of value or breach of contract, as with any other consequence of a damaging act, does not define or establish the date of injury." *MRI Broadway Rental*, 242 A.D.2d at 443, 662 N.Y.S.2d 114.

age/coverage cases" because "the case at bar does not involve asbestos installation." (Pl.Opp. at 15).[8] Plaintiff bases this contention upon the (New York State) Appellate Division's determination in the underlying suit that the cause of action did not accrue, i.e. "occur," until Chemical vacated the premises in 1994. (*Id.*).[9] The Court assesses the Appellate Division's ruling somewhat differently. That is, the Appellate Division concluded that for statute of limitations purposes the "**breach of contract claim would have accrued in 1994**"; it did not say that is when the property damage occurred. *Chemical*, 272 A.D.2d at 6, 712 N.Y.S.2d 452 (emphasis added). The Appellate Division found that

> the operative lease provision in this regard is article 34, addressing surrender of the premises.... Whether or not the failure to remove, upon or prior to surrender, the fireproofing it installed was a breach of this provision remains an unresolved issue; however, for Statute of Limitations purposes, the claim logically accrues upon the 1994 surrender.... This result comports with the reality that illegal installation of fireproofing that, by design, is concealed from our view, would reasonably be ascertainable only upon surrender.

*Chemical*, 272 A.D.2d at 18, 712 N.Y.S.2d 452.

▇▇ Here, the Policies apply "only to 'bodily injury' and 'property damage' which occurs during the policy period."

(Rosenberg Aff.Exs. F–M). Whether this case is labeled an asbestos installation case or an asbestos removal and re-spraying case, under controlling Second Circuit analysis, the key date for purposes of determining coverage is the date of "incorporation of asbestos." *Maryland Casualty*, 23 F.3d at 627. The inquiry revolves around when the hazardous condition was created. *See id.* In *Maryland Casualty*, the Court reasoned that "[t]he damage that the building owners are seeking to 'undo' is not the fact that they discovered asbestos, but the fact of its incorporation in their buildings." *Id.* Similarly, the damage Stahl sought to remedy was the "incorporation" of a hybrid fireproofing assembly in the Building, not its discovery in 1994.[10]

## Alleged Admission by Defendants

▇▇ It is Plaintiff's contention that, even if the Policies do not provide defense coverage for the Crow Construction fourth party lawsuit, Defendants have admitted their duty to defend Plaintiff. "Traveler's confirmed, in a letter dated March 5, 1999, that it was and is responsible under the terms of its policies issued to ISLAND to provide coverage for ISLAND'S defense...." (Complaint ¶ 6) (emphasis in original). Plaintiff also contends that Defendants admitted to an obligation to offer defense coverage in separate correspondence written between November 12, 1998 and March 12, 1999. (Pl.Opp. at 7).[11] De-

---

**8.** Plaintiff argues that this case "is different from and not controlled by the triggering rule in asbestos/property damage cases." (Pl.Opp. at 15).

**9.** Plaintiff asserts that "the Appellate Division held that Chemical's breach of the lease in 1994 was the injury-in-fact in the Stahl litigation." (Pl.Opp. at 15).

**10.** It is uncontested that the alleged " 'hybrid' fireproofing assembly of the old and new

spray-on fireproofing material that was not in compliance with local fire safety rule" resulted from Chase's remodeling in the 1980's. (Pl.Opp. at 2).

**11.** Defendants argue that this correspondence does not admit any obligation to provide defense coverage and is outside the pleadings and, in any event, cannot be considered on a motion to dismiss. (Def. Mem. at 3). The Court has considered these letters. When there is "undisputed notice of the contents of

fendants maintain that the March 5, 1999 letter to Plaintiff "specifically states that 'Traveler's reserves the right to assert that the coverage defenses in [our] November 12, 1998 letter apply to the defense of this matter.'" (Def.Mem. at 18). Defendants state that the November 12, 1998 letter to Plaintiff "articulated six Policy defenses ... including: (i) that the underlying pleadings do not allege 'property damage' during the policy period, and (ii) that the allegations against Plaintiff fall within the Policies' 'impaired property exclusion.'" (Def.Mem. at 3).

■ An insurer does not waive the defense of non-coverage by failing to include such a defense in a disclaimer letter. "Because waiver 'is a voluntary and intentional relinquishment of a known right,' the court reasoned, there can be no waiver of a right to deny coverage unless 'underlying coverage' exists." *Gallien v. Connecticut Gen. Life. Ins. Co.,* 49 F.3d 878, 885 (2d Cir. 1995) (quoting *Albert J. Schiff Assocs., Inc. v. Flack,* 51 N.Y.2d 692, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980)); *see also Mount Vernon Fire Ins. Co. v. William Monier Constr. Co,* 1996 WL 447747, at * 5 (S.D.N.Y. Aug.7, 1996) (citing *Gallien,* 49 F.3d at 885). Thus, the purported admission made by Defendants—assuming there were such an admission—would not create a duty to defend because the "property damage" here is not within the Policies coverage, as discussed *supra.*[12]

Plaintiff relies on two cases in support of its contention that Defendants admitted they had a duty to defend. (Pl.Opp. at 7). In *Scali, McCabe, Sloves, Inc. v. North River Ins. Co.,* 532 F.Supp. 203 (S.D.N.Y. 1981), the court found that the insurance company admitted that the policy afforded coverage based on three documents, including a letter from North River Insurance Company ("North River") to Scali, McCabe, Solves, Inc., the answer to the complaint, and an affidavit submitted by North River. 532 F.Supp. at 207. The Court in *Scali* also found that "[t]he insurance company's commitment, coupled with Scali's detrimental reliance thereon, estops the company from disclaiming coverage under the policy for Scali's legal expenses." *Id.*[13] In contrast, Plaintiff's "admission" argument is (entirely) dependant on four letters referred to in Plaintiff's Memorandum. (Pl.Opp. at 7–10). These letters do no more than acknowledge a willingness to participate in the defense, "while [Defendant's] further investigate the facts and circumstances of this matter in the event that this investigation reveals additional information not currently known to Travelers." (Affidavit of Marc A. Bernstein dated November 15, 2000, Ex. A. at 8–9, Ex. B at 2, Ex. E at 1, Ex. I at 2; Rosenberg Aff.Ex. V at 1). Indeed, Defendants' March 5, 1999 letter to Plaintiff expressly "reserves the right to assert that the coverage defenses articulated in [its]

such documents" and they are "integral to the plaintiff's claim," the documents may be considered on a motion to dismiss. *Bridgeway Corp. v. Citibank,* 132 F.Supp.2d 297, 303 (S.D.N.Y.2001).

**12.** Plaintiff further argues that *Schiff* may be distinguished from the case at bar because in *Schiff* the carrier never admitted an obligation to defend and "disclaimed without acknowledging one way or another whether certain obligations were owed." (Pl.Opp. at 11). The Court is not persuaded. Even taking on the defense of an action does not create cov-

erage. In *National Indem. Co. v. Ryder Truck Rental, Inc.,* 165 Misc.2d 848, 630 N.Y.S.2d 621 (1995), the insurer undertook defense of the action, without a reservation of rights, and three years later advised the insured that coverage might not exist. *National,* 165 Misc.2d 848, 630 N.Y.S.2d at 622. The court, nevertheless, found that "waiver will not apply to create coverage where none exists." *Id.*

**13.** Plaintiff has not pled estoppel.

November 12, 1998 letter apply to the defense of this matter." (Rosenberg Aff. Ex. V at 2). And, Defendants' November 12, 1998 letter specifically reserves, among others things, its "right to assert that coverage does not apply to sums sought from the 'insured' which are not damages on the account of 'bodily injury' or 'property damage.'" (Rosenberg Aff.Ex. W at 9); *see also Smith Jean, Inc. v. Royal Globe Ins. Cos.*, 139 A.D.2d 503, 526 N.Y.S.2d 604, 605 (2d Dep't 1988) (insurer was permitted to deny coverage where defense was assumed under a complete reservation of rights).[14]

In *Allstate Insur. Co. v. Ramirez*, 208 A.D.2d 828, 618 N.Y.S.2d 396 (2d Dep't 1994), the Court found that Allstate had waived its right to deny insurance coverage where coverage was contested for the "first time on appeal" after "repeated concessions at the hearing." 208 A.D.2d 828, 829, 618 N.Y.S.2d 396 (2d Dep't 1994). The insurer's concession below had "foreclosed any inquiry into the matter." *Id.* That is certainly not this case.

### Impaired Property Exclusion

Defendants claim that even if the underlying pleadings had alleged facts showing that Island caused "property damage" within the policy period, the Policies' exclusion language makes clear that the Policies do not provide coverage for the Plaintiff in the Crow Construction fourth party litigation. (Def.Mem. at 14–16).[15] "The impairment to the Premises for which Island is being sued is alleged to have resulted from its defective work.... The allegations against Island—whether meritorious or not—fall squarely within the 'impaired property' exclusion and, thus, Travelers has no defense obligation." (Def. Reply Mem. at 10). The Policies exclude coverage for: "Property damage" to "impaired property"[16] or property that has not been physically injured, arising out of: (1) a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or (2) a delay or failure by you or anyone acting on your behalf to perform a contract in accordance with its terms. (Rosenberg Aff.Exs. F–U).

 Under New York law, "[w]here the complaint contains allegations that bring the claim even potentially within the policy's coverage, the insurer is obligated

---

**14.** Plaintiff contends that *Smith* is inapplicable because, in *Smith*, there was a "complete reservation of rights." (Pl.Opp. at 11). Plaintiff's argument fails on two grounds. First, even accepting as true, for the purpose of this motion to dismiss, Plaintiff's allegation that Defendants had "admitted" to a duty to defend, *see* Complaint ¶ 6, as noted, New York law does not invoke waiver to create coverage where none exists. *See National Indem.*, 630 N.Y.S.2d at 624. Moreover, in the March 5, 1999 letter, *see* Rosenberg Aff.Ex. V, Defendants did not "admit" a duty to defend and there was a reservation of rights. *See De Jesus–Keolamphu v. Village of Pelham Manor*, 999 F.Supp. 556, 563 (S.D.N.Y.1998) (where "allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint.").

**15.** For the reasons stated *supra*, the Court need not conclusively decide this issue at this time.

**16.** Pursuant to the Policies:
"Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:
 (a) It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
 (b) You have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by:
 (a) The repair, replacement, adjustment or removal of "your product" or "your work"; or
 (b) Your fulfilling the terms of the contract or agreement.
(Rosenberg Aff.Exs. F–U).

to defend." *Fuchsberg & Fuchsberg v. Chicago Ins. Co.,* 2001 WL 484013, at *10 (S.D.N.Y. May 7, 2001) (quoting *Ogden Corp. v. Travelers Indemnity Co.,* 924 F.2d 39, 41 (2d Cir.1991)). Further, "[t]o negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Id.* at *10 (quoting *Village of Sylvan Beach v. Travelers Indemnity Co.,* 55 F.3d 114, 115–16 (2d Cir.1995)). Where the insurer shows that the allegations against the policyholder are solely and entirely within the policy exclusion, the insurer has no duty to defend. *See Technicon Electronics v. American Home Assurance Co.,* 74 N.Y.2d 66, 73–74, 544 N.Y.S.2d 531, 533, 542 N.E.2d 1048 (1989).

The complaints in the underlying actions allege that the Plaintiff's creation of a hybrid fireproofing assembly posed a "hazardous condition ... in that the structural steel was unprotected in the event of fire." (Rosenberg Aff.Ex. B ¶ 15). Additionally, the underlying complaints allege that the "nature and extent of [the] ... hybrid fireproofing assembly endangered the health and safety of a considerable number of persons ... and constituted a public nuisance under New York law." (Rosenberg Aff.Ex. B. ¶ 29). Were the Court to reach this issue, it would be constrained to find that the Policies' exclusionary language with respect to the definition of "impaired property" is unambiguous. The Premises were rendered "impaired property" as a result of Plaintiff's work, i.e. the "hybrid fireproofing assembly." *See American Int'l Surplus Lines Ins. Co. v. Ies Lead Paint Div., Inc.,* 1996 WL 135334 (E.D.Pa. Mar.18, 1996). Defendants have no duty to defend the instant action.

IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's complaint is granted. The Clerk is respectfully requested to close the case.